[Civ. No. 22541. Second Dist., Div. One. Jan. 14, 1959.]

IRMA L. TAYLOR, Plaintiff and Respondent, v. LOTTIE L. TAYLOR et al., Defendants and Respondents; KATIE M. EUSTACE, as Executrix, etc., Appellant.

Edmond Gattone and Paul P. Selvin for Appellant.

John W. Brooks, Alan F. Asher, W. A. Bullis and Owen E. Kupfer for Respondents.

WHITE, P. J.—Appellant is the executrix of the estate of Charles W. Fourl, deceased, and a defendant and cross-defendant in the action. The appeal is from a portion of the interlocutory judgment that "the limited partnership of Massey and Associates was dissolved"; that receivers appointed by the court are in possession of all of its business and are managing and operating the same; that the respective interests of the members of the dissolved partnership and their successors and assigns are in accordance with the list therein, which includes Margot M. Mayo 27.5/855ths, L. A. Wagner 11.25/855ths, and appellant herein 11.25/855ths; that two accounts of the receivers are correct; that the receivers hold in trust (and not as partnership property) the following items: for Margot M. Mayo $1,430; for L. A. Wagner

$5,821.87; and for appellant $5,821.88, each as of March 8, 1956; that the receivers shall sell all partnership assets at public auction and distribute the proceeds of operation and sale of the partnership property in accordance with the said list showing the respective interests of the partners and their successors and assigns.

The appeal must be considered in two parts: (1) appellant's claim that her interest is not 11.25/855ths or any other portion of the limited partnership, but instead is an "overriding interest" in certain oil wells drilled by the partnership on the Taylor land; and (2) appellant's claim that the court erred in its division of such "overriding interest" so as to award appellant only 11.25/855ths instead of 17.25/855ths of the proceeds from said oil wells.

Attorneys Brooks, Asher and Bullis represent 28 respondents who were members of the dissolved limited partnership and answer only the appellant's first point; while Attorney Kupfer represents respondent Wagner, who was a coowner of the claimed "overriding interest" (with appellant's decedent and defendant Mayo who has not appeared in the instant appeal) and answers only the second point.

The two portions of the appeal will be separately considered. The following is a summary of the evidence pertinent to appellant's claim that the court erred in deciding that Fourl's interest in the two oil wells drilled by Massey and Associates is to be computed in the same manner as though it were the interest of a limited partner in Massey and Associates.

May 13, 1927, W. W. Taylor and Lottie L. Taylor, his wife, as owners and lessors, and Fourl (appellant's decedent) entered into an oil lease, under which four wells were drilled. As to those wells and their continued production there is no controversy.

Lessors, the Taylors, wanted more wells drilled. A disagreement arose as to the rights of Fourl and his assignees (Wagner and Mayo) under the Fourl lease in such proposed additional wells, or in the land upon which the owners proposed to drill them.

In 1937, an action to quiet title against the 1927 Fourl Lease was commenced by the owners.

January 28, 1938, Attorney Cree, representing Lottie L. Taylor, Lees W. Taylor, and Jessie Taylor Reedy, the widow, son and daughter of W. W. Taylor, and the then owners of said land, wrote Fourl that, in return for "quitclaim deeds

sufficient to clear the said premises of the oil and gas lease,'' Fourl and his assignees (Mayo and Wagner) would become the owners of ''five percent (5%) of the proceeds, less the pro rata share of the operating costs, hereafter realized from the sale of all oil and gas produced and saved from the first two (2) wells drilled by the undersigned and associates on the undrilled portion of the said ten acres.''

The witness Luther Mayo, assignor of Margot Mayo, testified that before he, Fourl and Wagner executed the quitclaims, Lees Taylor (deceased at the time of the trial), acting for himself and the other owners of the land, promised that Fourl and his assignees would receive as consideration for their quitclaim deeds 5 per cent of production subject to operating costs only.

Respondents, in their brief, state that ''no evidence whatever was presented by the appellant to negative the effect of defendants' Exhibit 'O' or the testimony of Wagner that Fourl had received this offer before the execution of the quitclaim deed.''

Defendants' Exhibit ''O'' was offered and introduced in evidence by appellant. It is the letter from Attorney Cree's files in which Fourl was offered 5 per cent of the proceeds, less the pro rata share of the operating costs. It mentions no partnership. At that time, Massey and Associates had not been formed. The land was then subject to no oil lease other than Fourl's lease because of which the land owners were seeking quitclaim deeds. Respondents concede that the only consideration offered for the execution of the quitclaim deeds was the 5 per cent interest in the production of the next two wells to be drilled on the land as stated in said letter, and that on February 7, 1938, the quitclaim deeds were executed by Fourl, Wagner and Mayo.

June 16, 1938, the three owners of the land became partners in Massey and Associates, Lees W. Taylor a general partner and the others limited partners. In all there were about 30 partners, two general and the remainder limited.

September 1, 1938, Massey and Associates entered into an oil lease with the owners, by which the partnership agreed to drill two wells, from the production of which the owners would receive 12.5 per cent, their attorney Brooks 1 per cent, and their geologist or engineer 1 per cent ''off the top,'' leaving 85.5 per cent of the selling price of such production to be paid by the respective purchasers to Massey and Associates.

October 28, 1938, and December 29, 1939, the wells "spurted in." In May, 1940, the first distribution of income was made to the partners.

September 23, 1940, is the date of an Amendment to the Certificate of Partnership of Massey and Associates. It recites that "it is desired to admit" Mayo, Wagner and Fourl as "additional" limited partners. Margot Mayo, assignee of Luther Mayo whose interest was the consideration for his quitclaim to the owners, signed the Certificate. Fourl and Wagner did not. There is no evidence that they even knew of its existence. From May, 1941, to the beginning of the receivership, Margot Mayo was paid the same as the limited partners of Massey and Associates. Fourl and Wagner received no payment.

August 10, 1950, Fourl died.

April 17, 1951, and June 26, 1953, Taylor and Massey, the general partners, died. Massey and Associates, according to its certificate of limited partnership, was dissolved by the death of the last general partner on June 26, 1953. Irma L. Taylor, one of the limited partners and the widow of Lees W. Taylor, one of the general partners, seeks by the instant action to have the partnership assets sold and distributed in accordance with the partnership agreement.

January 22, 1954, receivers were appointed to operate and sell the partnership business and distribute its income and assets.

The portion of the judgment which gives rise to appellant's first claim of error on the part of the trial court is that "by whatever name they may be called," the interests of Fourl, Wagner and Mayo are to be sold by the receivers along with the partnership assets and the interests of Fourl, Wagner and Mayo in the proceeds of the sale "are to be computed in the same way as the interests of the Limited partners."

Fourl, Mayo and Wagner were not members of Massey and Associates. There is no evidence that the original agreement between the owners and Fourl, Mayo and Wagner was ever modified with respect to the consideration for the quitclaim deeds, or otherwise, or that they agreed to look solely to Massey and Associates for payment of the 5 per cent due them.

Although the interests of Fourl, Wagner and Mayo are not mentioned in the Massey oil lease, it is conceded that Massey and Associates, when entering into their lease for the drilling

of two wells, knew of such interest and agreed with the owners that the 5 per cent would be paid to Fourl, Wagner and Mayo out of the portion of the proceeds from the oil to be paid to them by the purchasers.

On the books of Massey and Associates, during its entire existence, 50/855ths of the *partnership's distributable income* was credited to Fourl, Mayo and Wagner. We note, however, that 50/855ths is not 5 per cent (but is 5.84 per cent) of the 85.5 per cent of the production. In other words, 50/855ths is 5 per cent of the entire production before payment of the 14.5 per cent royalties "off the top." Without conflict the evidence is that against such 5 per cent or 50/855ths of the entire production credited to Fourl, Mayo and Wagner, Massey and Associates charged, not only 50/855ths of the cost of operating its two wells, but also 50/855ths of about $80,000 expended for drilling said wells, the amounts of partners' salaries, other items of expense of partnership administration, and reserves to repay the contributions of the various partners.

No evidence that Fourl was ever told or knew anything of the bookkeeping methods or entries of Massey and Associates has been called to our attention and we have found none.

Respondents, in their brief, state that some further explanation "seems to be required for the trial court's finding that the interest in question should be determined 'in the same way as the interests of the limited partners' . . .

"The interest in question always has been so computed; and this without objection or question on the part of any one of the three interested parties (Mayo, Wagner or Fourl). No concealment was practiced by the management of the limited partnership. It would require the most extreme credulity to hold that Fourl, 'the principal negotiator for the quitclaiming lessees' was ignorant of the manner in which the interests were being computed; or that he would allow the statute of limitations, each year, successively to bar a claim for a greater share of the annual earnings of the partnership than was being impounded for the three quitclaiming lessees, collectively."

Respondents, in their brief, urge that, assuming a share of the production greater than that credited to Fourl and his assignees on the partnership books was once owed to them, it has been lost and cannot now be collected because of laches, equitable estoppel and the statute of limitations, all of which issues were pleaded and presented in the trial court.

Those matters were mentioned by counsel during the trial, at the end of which it was stipulated by all counsel at the suggestion of the trial court that appellant's answer may be "deemed a cross-complaint" and respondents may be deemed to have denied the allegations thereof and "to have raised the affirmative defenses of the Statute of Frauds, Statute of Limitations, estoppel and laches." Nowhere in the record or briefs on appeal is there any mention of the specific statute or statutes so relied upon. Under the peculiar circumstances of this case, however, we have presumed that any statute or statutes lending support to the judgment was pleaded as an affirmative defense. We cannot presume that evidence not in the record was considered by the trial court.

Respondents call attention to Fourl's delay until the witnesses to the agreement, as well as the setting up of the accounts, were dead. Also, it is noted by this court that Fourl, himself, was dead when this action was instituted not by his representative but by one of the surviving partners.

From the evidence, it appears without conflict that Lees Taylor, the owner who dealt with Fourl in obtaining for all the land owners the quitclaims of Fourl, Mayo and Wagner, was also the general partner in Massey and Associates who had the account of Fourl, Mayo and Wagner placed upon the books of Massey and Associates. There is nothing in the record showing that any payment or statement of that account was ever offered to or requested by Fourl. The trial court found and concluded that the amounts so credited to the accounts of Fourl, Mayo and Wagner and at the time of the trial remaining in the hands of the receivers of the partnership property appointed by the court were not partnership property, but were held by the receivers in trust for Fourl, Mayo and Wagner.

There is no evidence in the record indicating when or how the error crept into the partnership books causing only 50/855ths of its *distributable income* to be credited to this trust account in lieu of 50/855ths of the *proceeds from the sale of the oil from its two wells subject only to operating costs*. Nor is there any evidence that Taylor, Fourl or the partnership bookkeeper suspected that an error had been made in the account. Appellant's recovery is not limited to such erroneous amount credited to Fourl upon the books of Massey and Associates. (*Jefferson* v. *Pietroroia*, 5 Cal.2d 222 [54 P.2d 7].)

Respondents, while apparently taking it for granted that

the statute of frauds, laches and equitable estoppel preclude a recovery by appellant of any larger sum than the amount credited to Fourl upon the books of Massey and Associates, have not stated in their brief either logic or citations of authority for their application in support of the judgment from which the instant appeal was taken. Considering the record and all the circumstances in this case, we deem respondents' affirmative defenses of the statute of limitations, statute of frauds, laches and equitable estoppel inapplicable.

Respondents, presumably as further justification for the court's finding that Fourl's interest was to be computed in the same manner as that of a limited partner, state in their brief that ''substantial and uncontradicted evidence rebuts'' appellant's ''contention that Fourl was entitled to an overriding royalty interest; and that the most that he ever could have been entitled to receive is a participating interest.''

While there is some confusion in the record and briefs surrounding the use of the terms ''overriding'' and ''participating'' interests, our attention has been called to no testimony or documentary evidence tending to show that either of those terms was used by either Fourl, Taylor (one of the owners and agent for the others), or Cree (the owners' attorney) while negotiating their agreement that the consideration for the quitclaims to the Taylors would be 5 per cent of production subject to operating costs only; nor is there any evidence that those terms were used by the parties in later discussing said 5 per cent interest. Fourl's interest not having been named by the parties to the agreement, we deem the naming of such interest unnecessary to this decision.

Fourl's interest, designated by the parties to the agreement at the time of its creation as ''5% of production subject to operating costs only,'' must be construed in the light of the circumstances then existing and the expressed intention of the parties at that time. (*Dabney-Johnston Oil Corp.* v. *Walden*, 4 Cal.2d 637, 651 [52 P.2d 237].)

The two oil wells from which Fourl's 5 per cent of production was to be received were to be drilled on the same 10 acres on Signal Hill on which there were already six producing wells, four of which had been drilled under the Fourl lease then being cancelled.

Massey and Associates, as lessees under a lease made some months after Fourl's agreement with and quitclaim to the landowners, drilled the two oil wells. The funds used for the

drilling were contributed by the general and limited partners of Massey and Associates in return for agreed portions of the partnership's distributable income. The lease to Massey and Associates expressly required payment "off the top" of the 14.5 per cent royalties hereinbefore referred to. While not mentioned in the lease, all parties to the instant action concede that Massey and Associates, as additional consideration to the owners for the oil lease to them, agreed to pay the owners' obligation to Fourl and his assignees amounting to 5 per cent of the proceeds from the production of the proposed two oil wells subject to operating expenses only. It cannot be presumed that either the Taylors (the landowners) or Fourl intended that "5% of production subject to operating expenses" would be treated as synonymous with 50/855ths or 5.84 per cent of the distributable income of a partnership not yet created, to be earned by such partnership as the lessee in an oil lease not yet executed.

An interest in oil production created by the landowners, as was the Fourl interest in the instant action, unless expressly limited is "generally regarded in Southern California as an unlimited, permanent interest." While the evidence is without conflict that Fourl's interest here being considered was expressly limited to "the next two wells to be drilled" and was to be "subject to operating costs," there is in the record no evidence of any other limitation upon it. The items to be charged against Fourl's interest are only those contemplated by the agreement. (*Dabney-Johnston Oil Corp.* v. *Walden, supra*, 653, 657.)

Fourl was not a successor or assignee of the partnership. His interest in the oil produced by Massey and Associates was never owned by the partnership. That interest was granted to Fourl by the landowners before the formation of the partnership. Massey and Associates leased the land with full knowledge of Fourl's interest. Therefore, the 5 per cent interest of Fourl and his assignees was not limited to the term of the lease or the life of the partnership, but was and is a perpetual interest in the oil and other hydrocarbon substances to be produced from the two wells drilled by Massey and Associates under their lease. (*Callahan* v. *Martin*, 3 Cal.2d 110, 114, 125 [43 P.2d 788, 101 A.L.R. 871] ; *Beam* v. *Dugan*, 132 Cal.App. 546, 549, 553 [23 P.2d 58] ; *Standard Oil Co.* v. *J. P. Mills Organization*, 3 Cal.2d 128, 133 [43 P.2d 797] ; *Dabney-Johnston Oil Corp.* v. *Walden*, 4 Cal.2d 637, 648 [52 P.2d 237].) The interest of Fourl in the production of said

two wells is not a partnership asset and may not be sold by the receivers in the instant action.

 A fair epitome of the record concerning appellant's second claim of error follows.

Respondent Wagner was a legal secretary employed in Fourl's law office for about 20 years. She also loaned money to him. In 1940 the law office was closed.

She testified that Fourl agreed that the portion of the 5 per cent remaining after payment to Mayo (when his interest was determined in a then pending court action for that purpose) would be divided equally between Fourl and Wagner; that on several occasions he promised to go with her to the office of Massey and Associates and sign a paper to that effect; that he always said he would do so, but he never did. Respondent also calls the court's attention to the presumption that coowners' interests are equal when not expressly otherwise stated.

Appellant contends that the 5 per cent being the consideration for the quitclaims of the former oil lease must be divided in the same ratio as their interests in the former oil lease. He urges that testimony as to the fractional coownership of the oil lease quitclaimed as consideration for the 5 per cent, and the presumption that the 5 per cent should be divided in the same manner, requires reversal of the judgment giving to appellant and Wagner equal portions.

 Appellant insists that the oral testimony of Wagner must be disregarded by the court because of the Dead Man Statute (Code Civ. Proc., § 1880, subd. 3) which provides that a person cannot be a witness in an action or proceeding prosecuted ''against an executor . . . upon a claim, or demand against the estate of a deceased person, as to any matter or fact occurring before the death of such deceased person.'' The instant action is not ''against an executor . . . upon a claim.'' It is conceded by all parties that decedent and Wagner were coowners of the 5 per cent interest involved herein. The portion of said 5 per cent interest belonging to Wagner is not and never was a part of Fourl's estate. Consequently, the statute so relied upon by appellant is not applicable, and the testimony of Wagner was properly admitted over appellant's objection on that ground.

 Considering that testimony together with the other evidence, admissions, and stipulations in the instant appeal, we are not convinced that, as a matter of law, the finding and

conclusion as to Wagner's portion being equal to that of Fourl is without sufficient support.

The judgment as to defendant and cross-complainant L. A. Wagner is affirmed. In all other respects the judgment insofar as it affects the appellant herein is reversed and the cause remanded with directions to the court below to retry the cause as to such appellant and render judgment as to her in accordance with the views herein expressed.

Fourt, J., and Lillie, J., concurred.