[Civ. No. 50281. Second Dist., Div. One. Aug. 5, 1977.]

JOSEPH R. HAMWI et al., Plaintiffs and Appellants, v. CITINATIONAL-BUCKEYE INVESTMENT CO. et al., Defendants and Respondents.

**COUNSEL**

Cotchett, Hutchinson & Dyer, Charles A. Dyer and Susan Illston for Plaintiffs and Appellants.

Loeb & Loeb, Howard I. Friedman and Andrew S. Clare for Defendants and Respondents.

**OPINION**

**THOMPSON, J.**—This is an appeal from a judgment dismissing a class action "as to unnamed members of the purported class." It raises the issue of the propriety of a trial court determination denying class status where: (1) the action is based upon an ambiguous provision common to written contracts between purported class members and defendants; (2) all contracts were individually negotiated by contracting parties of

equivalent business sophistication; (3) the ambiguous provision was individually discussed by purported class members and defendants; and (4) no standard presentation of the transaction or set representation is involved.

We conclude: (1) the plaintiffs purporting to represent the class have the burden of establishing that there is an ascertainable class and a well-defined community of interest in the questions of law and fact involved in the litigation; (2) the trial court's conclusion that plaintiffs failed to satisfy their burden must be sustained if founded on a rational basis; and (3) here there is such a rational base in evidence which establishes that individual factual determinations necessary to construction of the ambiguous provision of the contracts negate the existence of the requisite community of interest. Accordingly, we affirm the judgment.

### Facts

On April 15, 1966, Joseph R. Hamwi, Richard I. Roemer, and two others leased approximately 2,400 square feet of space for a law office in the City National Bank Building. The lease was negotiated by the lessees with Buckeye Realty and Management Corporation acting as agent for Citinational-Buckeye Investment Co., the lessor. It is embodied in a printed form prepared by the lessor but modified by typed addenda.

Rent for the five-year term is stated at $1,391.50 per month. Paragraph 21 of the printed portion of the lease states: "It is mutually agreed that LESSEE shall pay, during the term hereof, all taxes assessed on trade fixtures, personal property or leasehold improvements installed by LESSEE or in possession of LESSEE in, upon or about the premises, and assessed against the real property of which the premises are a part. In the event any such taxes should be assessed against said real property, the amount of such taxes shall become a part of the rent due hereunder and shall be payable upon the first rent due date after demand for payment has been made. [¶] LESSEE shall pay to LESSOR upon receipt of a statement therefor, such proportion of the following items as the area of space rented by LESSEE bears to the total net rentable area of the building: (a) any increase in cost to the LESSOR of all utilities, janitorial services and supplies, elevator and air conditioning maintenance, security guard service and insurance over and above that incurred during the first full calendar year following the commencement date of this lease; and (b) any increase in the city, county and special district real estate taxes in excess of the real estate taxes levied against the building for the

fiscal year ending on June 30 following the commencement date of this lease."

On July 7, 1972, Hamwi and Roemer filed the complaint which commenced the case at bench. As amended, the complaint names Citinational-Buckeye Investment Co., Citinational-Buckeye Building Co., Buckeye Realty and Management Corp., and Buckeye Construction Co., Inc., as defendants. Plaintiffs sued on their own behalf and as representatives of a class composed of all tenants "who have, during unascertained periods in the past, leased and are presently leasing floor space pursuant to a written lease" in the City National Bank Building and 20 other buildings owned or operated by Buckeye.

The complaint contains the mechanical allegations necessary for a class action and asserts that paragraph 21 of the lease was breached by Buckeye in two respects: (1) Buckeye failed to include garage space in determining the total "rentable area" of its buildings when computing amounts to be added to rent for increase in taxes and building services; and (2) Buckeye computed the additional rent with reference to increased taxes on the entire real property rather than upon an allocation of increased taxes attributable to the "building" alone. The assertion is the basis of causes of action on behalf of the class for breach of leases, fraud in the nature of an intent not to perform as promised in the leases, and "breach of fiduciary duty" for failing to compute additional rent as required by the leases. $1,000 is sought as damages for Hamwi and Roemer, and $300,000 is sought for the class.

On March 11, 1974, plaintiffs pursued discovery by interrogatories designed to establish that there was, through a set of complex business arrangements, a common ownership in City National Bank Building and the 20 other buildings managed or operated by the Buckeye group, and that the leases of space in the 21 buildings contained identical rent escalation clauses. Interrogatory number 7 sought the identity of the owners of the City National Bank Building and the other 20 Buckeye buildings. That interrogatory was answered by defendants. Defendants objected to interrogatories which sought a listing of all other buildings owned by the persons named in the answer to interrogatory 7, buildings other than the 21 for which Buckeye was the leasing and managing agent and the owners of those buildings, whether the leases in the other buildings were substantially identical with those utilized in the City National Bank Building, the square footage and garage space of all buildings, the trades and occupations of the tenants of all the Buckeye buildings, the total number of tenants in those buildings, and the rental

rates used. Defendants objected, also, to supplementary interrogatories seeking the total number of tenants in Buckeye buildings with leases calling for rent escalation clauses similar to the clause used in the City National Bank leases.

Plaintiffs accepted defendants' response to interrogatory 7 specifying the owners of interests in the 21 buildings. They moved for further response to interrogatories to which objection had been made. On August 5, 1974, the trial court ordered further answers to the interrogatories seeking a listing of buildings for which Buckeye was agent and the names of the owners of those buildings. It required further answers to the interrogatories dealing with the content of leases in all buildings connected with Buckeye but limited defendants' obligations to respond to the rent escalation clauses of those leases. It otherwise denied plaintiffs' motion for further response to interrogatories.

The trial court explained its order with respect to plaintiffs' motion to compel further responses, stating: "It appears questionable . . . whether plaintiffs can proceed on a class action basis as to tenants in buildings other than the City National Bank Building. . . . This determination will need to be made at a later date by the class action department [of the Los Angeles Superior Court] in pre-trial proceedings. The above order is designed to allow plaintiff [*sic*] to obtain the necessary information to pose the question of the makeup of the class to the class action department without at this time requiring the detailed and expensive discovery necessary as to the rights of each potential class member in buildings other than the City National Bank Building. Accordingly, plaintiffs should at this time be allowed to find out if identical or similar rent escalation clauses exist as to other buildings managed by Buckeye . . . and whether there are tenants in the other buildings under leases with such clauses, but discovery as to amounts, square feet, etc., should be deferred pending pre-trial determinations."

Defendants filed further responses pursuant to the trial court order. Plaintiffs accepted the further responses without questioning them by a follow-up motion.

Subsequent interrogatories served and filed by plaintiffs on July 18, 1975, which sought greater detail of the ownership interests in the various Buckeye buildings, were met with an objection based upon the August 5, 1974 order. On September 2, 1975, plaintiffs moved to compel further answers to the interrogatories. No ruling on the motion appears in the clerk's or reporter's transcript.

On May 14, 1976, acting pursuant to the Class Action Manual of the Los Angeles Superior Court, plaintiffs filed their notice of motion for determination of class action. The motion states in part: "In Paragraph 12 of their Answer . . . the defendants admit that the calculation of additional rental on account of increased real estate taxes has been determined by reference to increases in total real estate taxes levied upon the real estate, and that calculation of 'net rentable area' excluded garage floors. The only issue as to liability, therefore, is whether or not said practice breached the lease." Points and authorities in support of the motion expand that proposition with the statement: "The focal issue of the litigation is the issue of defendants' breach of the lease contracts." In their points and authorities, plaintiffs state that their theory is not that the leases are contracts of adhesion.

The motion seeks declaration of a class of plaintiffs consisting of all tenants in the City National Bank and the other 20 Buckeye buildings who have leases "containing an identical 'rent-escalation clause' which is the basis of the action." The motion notes two potential subclasses, one consisting of "at least 460 tenants" in the City National Bank Building, and the other of "lessees of the remaining 20 buildings concerning which discovery has been disallowed pending determination of class status."

Declarations in support of plaintiffs' motion to certify a class are directed to indicia of common ownership or control of the 21 Buckeye buildings. No declaration or other evidence deals with the presence or absence of extrinsic evidence bearing upon the interpretation of paragraph 21 of any of the leases.

Defendants responded to the motion with a declaration that the various Buckeye entities were separate from Citinational-Buckeye Investment Co., the owner of the City National Bank Building, and that Buckeye serves merely as the management agent of the owners of other buildings. A declaration of Richard Jampol, senior vice president of Buckeye Realty and Management Corp., establishes that there are 86 rather than 406 lessees of the City National Bank Building and that Jampol, either personally or by telephone, negotiated leases in the City National Bank Building with "substantially all" 86 tenants. While the starting point of negotiations was a Buckeye form lease, "each operative clause or paragraph was the subject of numerous discussions with all tenants." No standard presentation was involved and such a practice was deemed inappropriate because all of the 86 tenants were "commercial enterprise[s]" such as "law firms, accounting firms, stock brokerage companies or the like."

Not one of the tenants accepted the standard form lease without question, and most of the leases which were executed contained modifications or addenda. Paragraph 21, the rent escalation clause, was discussed with "most" of the tenants. Over "30% of the leases relating to approximately 45% of the rentable space in the City National Bank Building contain escalation clauses which differ . . . from the rent escalation clause in [the Hamwi-Roemer] lease." Every tenant attempted to negotiate changes of the form lease.

If Hamwi and Roemer are correct in their lease interpretation, their recovery would be $1,000 and the recovery of the 55 other tenants with an identical escalation clause would average $725.

The trial court determined that there was "a lack of probative evidence adduced by plaintiffs to establish that this is a proper class action," and that "the unique questions of law and fact predominate over the common questions."

Findings of fact of the trial court recite: (1) Hamwi and Roemer lack standing to prosecute the action on behalf of tenants other than those in the City National Bank Building; (2) paragraph 21, the rent escalation clause, "is ambiguous on its face," both as to meaning of net rentable area and the base upon which increased taxes are to be computed; (3) the clause "is not susceptible to a uniform interpretation" so that to determine its meaning a court must consider "the circumstances surrounding the negotiations and execution of each individual lease"; (4) "the unique questions of fact and law . . . predominate over the common questions of fact and law . . ."; and (5) tenants other than Hamwi and Roemer who believe they are entitled to refunds of sums computed under the rent escalation clause have a remedy by suit in the municipal court.

Consistent with its findings of fact, the trial court entered its judgment dismissing the action "without prejudice . . . as to the unnamed members of the class only . . . ." This appeal from that appealable judgment (*Wechsler* v. *Laskey-Weil, Inc.* (1974) 42 Cal.App.3d 728, 729 [117 Cal.Rptr. 237]) followed.

### Plaintiffs' Contentions

Hamwi and Roemer contend that the trial court erred in denying class status to the litigation because: (1) their burden is only to establish a "reasonable possibility" of the existence of the prerequisites to such an

action and they have satisfied that burden so as to establish the propriety of class treatment of an action on behalf of all tenants of Buckeye managed or operated buildings; (2) the rulings of the trial court erroneously denied them discovery which would have permitted them to carry any greater burden of establishing class action propriety; (3) paragraph 21 is unambiguous so that common questions of fact and law predominate or, alternatively, that the paragraph is an ambiguous provision of a contract of adhesion which must be construed against defendants to the same result; (4) in any event, the propriety of class status is established as to tenants in the City National Bank Building; and (5) "Failure to proceed as a class action will likely allow defendants to retain the benefits of their wrongs."

### *Community of Interest—Plaintiffs' Burden*

■ A class action is appropriate only when there exists a "sufficient community of interest" in "common questions of law and fact" so that proceeding in the class action form will result in "substantial benefits both to the litigants and to the court." (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 460 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].) The requisite community of interest exists only where "the issues which may be jointly tried, when compared with those requiring separate adjudication, [are] sufficiently numerous and substantial to make the class action advantageous . . . ." It is not present where each class member is "required to individually litigate numerous and substantial questions to determine his right to recover . . . ." (*Id.,* at p. 460.)

Thus, if a class action "will splinter into individual trials," common questions do not predominate and litigation of the action in the class format is inappropriate. (Comment, *Litigating the Antitrust Conspiracy Under Amended Rule 23* (1968) 54 Va.L.Rev. 314, 318.)

■ On a motion to certify class status of an action, it is the plaintiff's burden to establish that in fact the requisites for continuation of the litigation in that format are present. (*City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447, 460; see also *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 820-821 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].) Contrary to plaintiffs' contention, satisfaction of that burden requires that the plaintiff establish more than "a reasonable possibility" that class action treatment is appropriate. The "reasonable possibility" standard applies when the class action complaint is tested on demurrer (*Vasquez,*

*supra,* at p. 813), but not when the court determines the issue of class propriety at hearing on an appropriate motion at which evidence is presented. (*Vasquez, supra,* at pp. 820-821; see also *Beckstead* v. *Superior Court* (1971) 21 Cal.App.3d 780, 783 [98 Cal.Rptr. 779].) Then the issue of community of interest is determined on the merits and the plaintiff must establish the community as a matter of fact.

### Community of Interest—Trial Court Discretion

■ The trial court is vested with discretion to determine whether the plaintiff has sustained his burden of establishing the factual predicate for class action treatment. So long as that court applies proper criteria and its action is founded on a rational basis, its ruling must be upheld. (*Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355, 361 [134 Cal.Rptr. 388, 556 P.2d 750].) Plaintiffs do not assert that the trial court applied improper criteria. They do claim that there is not a rational base for the trial court's ruling.

### Community of Interest—Paragraph 21 of Leases

■ The record contains a rational basis supporting the trial court's determination. Paragraph 21, the rent escalation clause of the various leases, is ambiguous in a form which permits extrinsic evidence of each individual lease negotiation to be utilized in its interpretation. That determination leads to the conclusion that the class action as filed could well splinter into individual trials of the meaning to be given paragraph 21.

Whether the causes of action stated in the complaint are characterized as for breach of the lease contract or for fraud, they depend upon a construction of paragraph 21 which: (1) determines "total net rentable area" to include garage space; or (2) treats "real estate taxes levied against the building" as excluding taxes allocable to the land on which the building sits. That construction by no means necessarily flows from the face of the instrument.

"Total net rentable area," as used in paragraph 21 of the leases, may refer to net rentable office space or it may refer to all areas of the building which produce revenue, thus including garage space. "Real estate taxes levied against the building" may refer to taxes on the real

property of which the building is a part, or it may refer to that portion of taxes assessed against land and improvements which is allocable to the building alone.[1] In either instance, extrinsic evidence is admissible to give meaning to the ambiguous phrase. (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].)

Because the record contains evidence that paragraph 21 was individually discussed with substantially all tenants in the City National Bank Building, the trial court could properly conclude that interpretation of the paragraph in each individual instance would involve a separate trial of the issue of meaning based upon extrinsic evidence of those discussions. (See *Occidental Land, Inc.* v. *Superior Court, supra,* 18 Cal.3d 355, 361: "If plaintiffs' complaint had relied exclusively on the alleged oral misrepresentations of defendant to each homeowner, defendant's challenge to the [class] certification would be arguably meritorious." Cf. *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 811-812, involving a "standard representation" and *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 877 [97 Cal.Rptr. 849, 489 P.2d 1113], involving contracts of adhesion.)

Plaintiffs' contention on appeal that ambiguity in paragraph 21 must be construed against defendants because the leases are contracts of adhesion flies in the face of plaintiffs' trial court position and the record itself. In the trial court, plaintiffs unequivocally stated that they were not proceeding on the theory that the leases were contracts of adhesion. The record establishes that the leases were not presented on a take-it-or-leave-it basis, but were *individually negotiated and individually modified as the negotiations required.* (1 Witkin, Summary of Cal. Law (8th ed.) Contracts, § 13.)

Plaintiffs concede in their briefs that unless the "reasonable possibility" standard applies, they have failed to establish community of interest in a class consisting of tenants in the other 20 Buckeye buildings.

We thus conclude that after notice and hearing, the trial court properly determined that plaintiffs had failed to sustain their burden of establishing the community of interest necessary to maintenance of the litigation as a class action, either on behalf of all tenants of Buckeye managed buildings or tenants in the City National Bank Building alone.

---

[1] Real property taxes are generally assessed on land and buildings without allocation. (Rev. & Tax. Code, §§ 104, 105, 401.)

Plaintiffs having failed in their burden, it is irrelevant that persons without a community of interest may choose not to sue defendants. We therefore do not reach the intriguing issue of whether, in view of the degree of business sophistication of the persons constituting the purported class, a trial court finding that these persons possess an adequate potential for redress in municipal court actions independently supports the judgment.

## *Discovery*

Evidence presented at the hearing to certify the class was essentially limited to facts incident to the leasing of space in the City National Bank Building. Conceding that unless the "reasonable possibility" standard controls they have failed to establish a community of interest in tenants of the other 20 Buckeye managed buildings with tenants of City National Bank Building, plaintiffs assert that rulings of the trial court denying them discovery erroneously precluded them from carrying their burden.

■ Plaintiffs have not supplied us with a record which permits us to consider that assertion. "It is incumbent upon [an] appellant to make it affirmatively appear that error was committed by the trial court and to present a transcript which affirmatively shows on its face that error." (*Estate of Hudspeth* (1964) 225 Cal.App.2d 759, 762 [37 Cal.Rptr. 778].) Here plaintiffs did not include in their designation of the record on appeal the ruling of the trial court on plaintiffs' motion of September 2, 1975, to compel answers to interrogatories designed to elicit the information plaintiffs now claimed was denied them. Not having included the critical ruling in the record on appeal, plaintiffs cannot contend that the ruling, whatever it may have been, was erroneous.

■ Plaintiffs seek to avoid the compelled result by an attack upon the trial court order of August 5, 1974, as unduly restrictive of their right to discovery. The attack lacks merit. The order is one within the trial court's discretion. (Cal. Civil Discovery Practice (Cont.Ed.Bar 1975) §§ 1.7, 1.8.) Beyond that, it is a perceptive, innovative exercise of the trial court power contemplated by the California discovery statutes. Expense of discovery must be balanced against value of the information sought and the nature of the controversy. (Code Civ. Proc., § 2019; Cal. Civil Discovery Practice, *id.*, § 1.56.) Here the trial court order recognizes the requisite balance by tailoring discovery to the immediate demands of the litigation while leaving open the possibility of further discovery as developments alter the balance.

## *Disposition*

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 28, 1977.