[No. B211301. Second Dist., Div. Five. Mar. 15, 2010.]

HERMILO ARENAS et al., Plaintiffs and Appellants, v.
EL TORITO RESTAURANTS, INC., et al., Defendants and Respondents.

COUNSEL

Khorrami Pollard & Abir, Shawn Khorrami, Robert J. Drexler, Jr., Matt C. Bailey; The Quisenberry Law Firm and John N. Quisenberry for Plaintiffs and Appellants.

Morgan, Lewis & Bockius, Barbara J. Miller and Jennifer L. Bradford for Defendants and Respondents.

OPINION

WEISMAN, J.*—

## I. INTRODUCTION

Plaintiffs, Hermilo Arenas et al.,[1] on behalf of themselves and others similarly situated, appeal from an order denying a motion to certify a class of restaurant managers allegedly misclassified as exempt from overtime wage laws. The defendants are El Torito Restaurants, Inc., and Real Mex Restaurants, Inc. We find no abuse of discretion. We conclude the trial court could properly rule the action was not suitable for class treatment because the common questions of law and fact did not predominate over individualized issues. Accordingly, we affirm the order.

## II. BACKGROUND

### A. Exempt Employees

██ Overtime pay is required under Labor Code section 510, subdivision (a). (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 324 [17 Cal.Rptr.3d 906, 96 P.3d 194].) However, the Industrial Welfare Commission is authorized to establish exemptions from the requirement. (Lab. Code, § 515, subd. (a).) An exempt employee does not earn overtime pay. Labor Code section 515, subdivision (a) states: "The Industrial Welfare Commission may establish exemptions from the requirement that an overtime rate of compensation be paid pursuant to Sections 510 and 511 for executive, administrative, and professional employees, provided that the employee is

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] The named plaintiffs are Mr. Arenas, Marcelo Cruz Garcia, Alberto Muratalla, Elissa Williams, Michelle Carroll, Ruben Hinojo and Mitch Ryan.

*primarily engaged* in the duties that meet the test of the exemption, *customarily and regularly exercises discretion and independent judgment* in performing those duties . . . ." (Italics added.) The Industrial Welfare Commission's wage order No. 5-2001 (Cal. Code Regs., tit. 8, § 11050) governs overtime pay exemptions in the public housekeeping industry, which includes restaurants. (*Id.*, subd. 2(P)(1).) Wage order No. 5-2001 states: "Order Regulating Wages, Hours, and Working Conditions in the Public Housekeeping Industry. [¶] 1. Applicability of Order[.] This order shall apply to all persons employed in the public housekeeping industry [including restaurants] whether paid on a time, piece rate, commission, or other basis, except that: [¶] . . . [¶] (B) Provisions of Sections 3 through 12 [governing overtime pay] shall not apply to persons employed in administrative, executive, or professional capacities. The following requirements shall apply in determining whether an employee's duties meet the test to qualify for an exemption from those sections: [¶] (1) Executive Exemption[.] A person employed in an executive capacity means any employee: [¶] (a) Whose duties and responsibilities involve the *management of the enterprise* in which he/she is employed or of a customarily recognized department or subdivision thereof; and [¶] (b) Who *customarily and regularly directs the work of two or more other employees* therein; and [¶] (c) Who has the *authority to hire or fire* other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and [¶] (d) Who *customarily and regularly exercises discretion and independent judgment*; and [¶] (e) Who is *primarily engaged* in duties which meet the test of the exemption." (Cal. Code Regs., tit. 8, § 11050, italics added.)

### B. The First Amended Complaint

This action was commenced on May 17, 2006. The operative first amended complaint alleged as follows. Plaintiffs are individuals who were employed as salaried managers at El Torito, El Torito Grill and GuadalaHarry's restaurants in California from May 17, 2002, to the present. Defendants, pursuant to corporate policy, automatically classified plaintiffs as exempt based on their job description alone when they did not so qualify; failed to pay overtime wages; failed to provide meal and rest breaks, and timely and accurate wage and hour statements; failed to pay timely compensation upon termination or resignation; failed to maintain complete and accurate payroll records; wrongfully withheld wages and compensation due; and committed unfair business practices in an effort to increase profits at plaintiffs' expense. Plaintiffs alleged they routinely spent more than half their working hours performing duties delegated to nonexempt employees including but not limited to: "opening, operating and closing cash registers, preparing food products, cooking, preparing drinks, tending bar, waiting on tables, stocking shelves,

moving products, furniture and equipment, unloading trucks, bussing tables, cleaning, sweeping, dishwashing, and other general tasks." Plaintiffs further alleged they routinely spent less than half their working hours "performing work which was primarily intellectual, managerial or creative, or which required the regular and customary exercise of discretion and independent judgment with respect to matters of significance . . . ." Plaintiffs specifically alleged, "The exercise of discretion and independent judgment on matters of significance was given to employees on a level above that of Plaintiffs." Defendants' conduct was alleged to violate Labor Code sections 201, 202, 203, 226, 226.7, 510, 512, 515, 551, 552, 1194 and 1198; Industrial Welfare Commission (IWC) wage orders Nos. 5-1998, 5-2000 and 5-2001 (found at Cal. Code Regs., tit. 8, § 11050); and Business and Professions Code section 17200 et seq. Plaintiffs asserted seven causes of action: preliminary and permanent injunction; failure to pay overtime compensation (Lab. Code, §§ 510, 1194); failure to provide meal and rest periods (Lab. Code, §§ 226.7, 512); failure to furnish wage and hour statements (Lab. Code, § 226); for waiting time penalties (Lab. Code, §§ 201–203); conversion (Civ. Code, §§ 3336, 3294); and unfair competition (Bus. & Prof. Code, § 17200 et seq.).

With respect to class certification, plaintiffs alleged common questions of law and fact including but not limited to: "(a) What are the overall realistic requirements of the Manager job; [¶] (b) Do the Defendants have expectations for the job performed by the Managers; [¶] (c) If so, are those expectations realistic; [¶] (d) Are Defendants required by law to pay Managers overtime based on the duties assigned to them; [¶] (e) Did Defendants implement a systematic program of automatically classifying certain employees as Managers and then failing to pay them overtime; [¶] (f) Did Defendants devise a scheme and plan to circumvent California wage and hour laws; [¶] (g) Was Defendants' conduct fraudulent and deceitful; [¶] (h) Does Defendants' conduct violate the Employment Laws and Regulations; and [¶] (i) Do Defendants' systematic acts and practices violate, *inter alia*, California Business & Professions Code sections 17200, *et seq.*" Plaintiffs alleged they could represent the class because: "[A]ll Managers share the same or similar employment duties and activities, all are automatically classified by Defendants as exempt employees, and all are denied the benefits and protections of the Employment Laws and Regulations in the same manner. As all of Defendants' restaurants are substantially similar in size, sales volume and number of employees required to operate, and as Defendants have uniformly applied the same labor staffing guidelines and overtime policies to each restaurant, Plaintiffs' claims are typical of the claims of all Managers."

## C. The Class Certification Motion

Plaintiffs moved for certification of three subclasses of employees: kitchen managers or chefs; department managers (sometimes referred to as associate

general managers, assistant managers, floor managers, restaurant managers or bar managers); and general managers. The parties presented conflicting evidence. Plaintiffs presented evidence the putative class members had been misclassified in that they spent a majority of their workday doing nonexempt work, did not exercise discretion as to restaurant operations, and were required to follow company policy and procedure as to virtually every aspect of their jobs; moreover, these conditions did not vary from one location to another.[2] Plaintiffs also presented evidence managers operated under defendants' standardized policies and practices. Defendants, on the other hand, presented evidence they had twice conducted surveys of their managers' activities in order to determine their exempt or nonexempt status as a group. Defendants also presented evidence the managers' job duties and the time spent on particular tasks varied greatly from one location to another. Plaintiffs' motion was submitted for decision on June 20, 2008. Later that same day, however, the trial court vacated the submission and requested further briefing as to "whether there was widespread misclassification of putative class members." The trial court noted that two different courts had concluded two individual putative class member had not been misclassified and were in fact exempt.

The trial court issued a ruling denying class certification: "In order to certify a wage and hour class such as the instant matter a court must determine whether the issues in dispute are amenable to common proof. See *Sav-On Drug Stores, Inc. v. Superior Court*[, *supra*,] 34 Cal.4th 319; *Marlo v. United Parcel Service* [(C.D.Cal. 2008) 251 F.R.D. 476]; *Brinker v. Superior Court* (2008) 165 Cal.App.4th 25, 59 [80 Cal.Rptr.3d 781][, review granted October 22, 2008, S166350]. See also *Dunbar v. Albertson's, Inc.* (2006) 141 Cal.App.4th 1422, 1431 [47 Cal.Rptr.3d 83] ('[F]indings as to one manager could not "reasonably [be] extrapolate[d]" to others, given the significant variation in the work performed by grocery managers from store to store and

---

[2] For example, employee Michelle Carroll declared as follows. She worked as a department manager from September 2004 to August 2005. She was scheduled to work 50 hours a week. However, on average she worked 10 to 13 hours a day, five days a week. She did not receive overtime pay. Because of repeated interruptions, she usually did not take a full meal break. She was unable to take a rest break during the day. Per company policy, she had been trained in every aspect of the restaurant's day-to-day business. While working, she spent the majority of the day doing "hourly type" work: delivering food orders to tables; bussing and cleaning tables; seating guests; and taking drink orders. She was trained to lead by example, which meant participating in the hourly work. An evening shift typically lasted from 3:00 p.m. to 2:00 a.m. She spent two or 2½ hours per shift doing paperwork, and one hour per week preparing weekly staff schedules. She had no discretion to make decisions about the restaurant's operation. She could not open early or close late. She could not set prices or change the menu. She could not change the décor. She was required to follow company policy and procedure as to virtually every aspect of the restaurant's operation. Compliance was monitored by regional managers. Company policies and procedures and job duties and responsibilities did not vary from one location to the next.

week to week, as shown by defendant's evidence.') [¶] A plaintiff must have common evidence to support a legal theory of misclassification, either 'that deliberate misclassification was defendant's policy or practice' or similarly, that 'classification based on job descriptions alone resulted in widespread de facto misclassification.' *Sav-On Drug Stores, Inc. v. Superior Court, supra.* A class action is appropriate if 'plaintiffs are able to demonstrate pursuant to either scenario that misclassification was the rule rather than the exception. . . .' [¶] . . . [¶] The *Marlo* court identified the exact problem that this Court faces. Individual declarations submitted by the parties have anecdotal value but cannot be considered representative or common evidence. Specifically, the *Marlo* court stated the following: [¶] 'Plaintiffs evidence is essentially individual testimony and an exemption policy. Under the circumstances in this case, where Plaintiff alleges that 1200 [class members] have been misclassified as exempt employees, Plaintiff had to provide common evidence to support extrapolation from individual experiences to a class-wide judgment that is not merely speculative. Plaintiff has not come forward with common proof sufficient to allow a fact-finder to make a class-wide judgment as to the class members. . . . Because Plaintiff lacks common experience, the Court has no confidence that the jury will be able to do anything but speculate as to a class-wide determination.' *Marlo v. UPS, supra.* [¶] Here, the Court is faced with a similar situation and circumstance. In plaintiffs['] original briefing there was an attempt to show a level of standardization such that there was little variation in the day to day tasks of each class member. Upon close examination of plaintiffs' evidence it turned out that much of it was overstated. Moreover, the defendants successfully demonstrated that the volume of an individual store impacts the operations of the store. For example, the defendants have offered testimony from managers who worked at more than one restaurant wherein it was testified that job duties and time spent on various tasks was different depending on the restaurant. Specifically, in some restaurants the manager chose to hire a landscaper and janitor while other managers chose to do the landscaping and cleaning in house. [¶] The two sets of further briefing have only confirmed that there appears to be differences in individual store operations and in the experience of different putative class members. Plaintiffs' briefing is now comprised of a handful of individual declarations about job duties. Likewise defendants' briefing consists of counter declarations from putative class members and the picking apart the testimony regarding individual job duties. This is tantamount to conducting mini-trials on the merits. [¶] Based on the record presented, the plaintiffs have not demonstrated that resolution of the common issues of fact and law will be accomplished by common proof that can be extrapolated onto all class members. Instead, the plaintiffs have demonstrated that the case is replete with individual factual issues. Some class members could have been misclassified while others are clearly not misclassified as evidenced by this court's and Judge Meyer's decisions on summary judgment as to individual class

members' cases. The evidence presented by both sides demonstrates that resolution of the common issues would require mini-trials inquiring into the circumstances of each individual's job duties. Accordingly, this Court denies plaintiffs' motion for class certification."

## III. DISCUSSION

### A. Class Certification Standards

Class certification is governed by Code of Civil Procedure section 382. Code of Civil Procedure section 382 provides in part, "[W]hen the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue . . . for the benefit of all." Code of Civil Procedure section 382 authorizes a class action when a plaintiff meets his or her burden to establish the existence of an ascertainable class and a well-defined community of interest. (*Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th at p. 326; *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1103–1104 [131 Cal.Rptr.2d 1, 63 P.3d 913]; *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913 [103 Cal.Rptr.2d 320, 15 P.3d 1071]; *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27].) The Supreme Court has held, "The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23]; accord, *Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th at p. 326; *Lockheed Martin Corp. v. Superior Court, supra*, 29 Cal.4th at p. 1104.) The Supreme Court has held, " 'The ultimate question in every case of this type is whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.]" (*Lockheed Martin Corp. v. Superior Court, supra*, 29 Cal.4th at pp. 1104–1105, quoting *Collins v. Rocha* (1972) 7 Cal.3d 232, 238 [102 Cal.Rptr. 1, 497 P.2d 225].)

Trial courts are afforded great discretion in ruling on class certification issues because they are better situated to evaluate the efficiencies and practicalities of permitting a group action. (*Lockheed Martin Corp. v. Superior Court, supra*, 29 Cal.4th at p. 1106; *Linder v. Thrifty Oil Co., supra*, 23 Cal.4th at p. 435.) The trial court's predominance findings are reviewed for an abuse of discretion. When the decision turns on disputed facts or inferences to be drawn from the facts, this court cannot substitute its decision for that of the

trial court. (*Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th at p. 328.) If supported by substantial evidence, a trial court's ruling will not be disturbed unless improper criteria were used or erroneous legal assumptions were made. (*Id.*, at pp. 326–327; *Lockheed Martin Corp. v. Superior Court, supra*, 29 Cal.4th at p. 1106; *Linder v. Thrifty Oil Co., supra*, 23 Cal.4th at pp. 435–436.)

■ The focus in a class certification dispute is not entirely on the merits but on the procedural issue of what types of questions are likely to arise in the litigation—common or individual. (*Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th at pp. 326–327; *Lockheed Martin Corp. v. Superior Court, supra*, 29 Cal.4th at pp. 1106–1107; *Linder v. Thrifty Oil Co., supra*, 23 Cal.4th at pp. 439–440.) Thus, the existence of some common issues of law and fact does not dispose of the class certification issue. (*Lockheed Martin Corp. v. Superior Court, supra*, 29 Cal.4th at pp. 1108–1109; *Washington Mutual Bank v. Superior Court, supra*, 24 Cal.4th at pp. 913–914; *Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 809 [50 Cal.Rptr.2d 736].) Rather, in order to justify class certification, the Supreme Court held, "[T]he proponent of certification must show . . . that questions of law or fact common to the class predominate over the questions affecting the individual members . . . ." (*Washington Mutual Bank v. Superior Court, supra*, 24 Cal.4th at p. 913; accord, *Lockheed Martin Corp. v. Superior Court, supra*, 29 Cal.4th at p. 1108.) As the Supreme Court explained in *Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th at page 327: "As the focus in a certification dispute is on what type of questions—common or individual—are likely to arise in the action, rather than on the merits of the case [citations], in determining whether there is substantial evidence to support a trial court's certification order, we consider whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment. [Citations.]" A class action may be maintained even if each member must individually show eligibility for recovery or the amount of damages. But a class action will not be permitted if each member is required to "litigate substantial and numerous factually unique questions" before a recovery may be allowed. (*Acree v. General Motors Acceptance Corp.* (2001) 92 Cal.App.4th 385, 397 [112 Cal.Rptr.2d 99]; accord, *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 809 [94 Cal.Rptr. 796, 484 P.2d 964]; *Wilens v. TD Waterhouse Group, Inc.* (2003) 120 Cal.App.4th 746, 756 [15 Cal.Rptr.3d 271]; *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 742 [9 Cal.Rptr.3d 544].) The Court of Appeal has explained, "[I]f a class action 'will splinter into individual trials,' common questions do not predominate and litigation of the action in the class format is inappropriate. [Citation.]" (*Hamwi v. Citinational-Buckeye Inv. Co.* (1977) 72 Cal.App.3d 462, 471 [140 Cal.Rptr. 215]; accord, *McCullah v. Southern Cal. Gas Co.* (2000) 82 Cal.App.4th 495, 501–502 [98 Cal.Rptr.2d 208].)

### B. Application to the Present Case

The Supreme Court has held that certification of a proposed class cannot be denied based on the trial court's preliminary assessment of the merits of the claims. (*Linder v. Thrifty Oil Co., supra*, 23 Cal.4th at pp. 436–444; accord, *Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th at pp. 326, 327; *Lockheed Martin Corp. v. Superior Court, supra*, 29 Cal.4th at pp. 1104, 1108.) But absent other error, a trial court's ruling on a class certification motion that is supported by substantial evidence will not be disturbed on appeal unless improper criteria were used or erroneous legal assumptions were made: "Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence to support the court's order." ' [Citations.]" (*Linder v. Thrifty Oil Co., supra*, 23 Cal.4th at p. 436; accord, *Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th at pp. 326–327.) Here, plaintiffs do not argue the trial court's finding that individual issues were predominant lacked the support of substantial evidence. Instead, plaintiffs contend the trial court employed improper criteria and made erroneous legal assumptions in that it denied class certification because it found plaintiffs could not prove the class as a whole was misclassified—an ultimate merits determination. We conclude that under *Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th at pages 324–330, the trial court could reasonably decide that common questions of law and fact did not predominate over individualized issues.

In *Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th 319, the Supreme Court considered an order *granting* class certification in an action alleging, as here, that salaried managers were misclassified as exempt from overtime wage laws based on their job descriptions without regard to their actual work. The Supreme Court identified the underlying merits of the case as concerning "whether or not plaintiffs and those similarly situated properly were classified and paid under th[e] exemption." (*Id.* at p. 325.) With respect to the trial court's predominance finding—a comparative concept—the Supreme Court held the standard of review was whether the record contained substantial evidence. (*Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th at pp. 328, 334.) The court explained: "[A] reviewing court is not authorized to overturn a certification order merely because it finds the record evidence of predominance less than determinative or conclusive. The relevant question on review is whether such evidence is *substantial*." (*Id.* at p. 338, original italics.) The court emphasized, "But, '[w]here a certification order turns on inferences to be drawn from the facts, " 'the reviewing court has no authority to substitute its decision for that of the trial court.' " ' [Citations.]" (*Id.* at p. 328.) Turning to the evidence in the record, the Supreme Court found it was in conflict. The plaintiff had presented evidence deliberate

misclassification was the defendant's policy and practice; and further, classification based on job description alone had resulted in widespread misclassification. The defendant's evidence had shown there were wide variations in the types of activities and the amounts of time managers spent on those activities. The Supreme Court observed there was substantial albeit disputed evidence in support of two theories, either of which was amenable to class treatment: a deliberate misclassification policy and practice, or classification based on job description resulting in widespread de facto misclassification. (*Id.* at pp. 329–330.) The court held: "A reasonable court, even allowing for individualized damage determinations, could conclude that, to the extent plaintiffs are able to demonstrate pursuant to either scenario that misclassification was the rule rather than the exception, a class action would be the most efficient means of resolving class members' overtime claims." (*Id.* at p. 330.)

■ Here, the trial court credited defendants' evidence to the effect that managers' duties and time spent on individual tasks varied widely from one restaurant to another. The trial court concluded plaintiffs' theory of recovery—that managers, based solely on their job descriptions, were as a rule misclassified—was not amenable to common proof. As the Supreme Court made clear in *Sav-On Drug Stores, Inc.*, this court cannot now substitute its own judgment. (*Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 328.) Moreover, having credited defendants' evidence over plaintiffs', the trial court could reasonably conclude there was insufficient evidence of widespread misclassification, hence plaintiffs' theory of recovery was not susceptible to common proof. (See, e.g., *Dunbar v. Albertson's, supra,* 141 Cal.App.4th at pp. 1431–1432; *Jimenez v. Domino's Pizza, Inc.* (C.D.Cal. 2006) 238 F.R.D. 241, 250–253.) In so concluding, the trial court did not improperly require plaintiffs to prove they could prevail on the merits of their claim. It simply considered whether plaintiffs' theory of recovery—misclassification based on job description—was, as an analytical matter, amenable to class treatment. (*Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 327.) Contrary to plaintiffs' characterization of the trial court's ruling, the court did not find predominance *must* be established by evidence the class as a whole was misclassified. The trial court could, without abusing its discretion, conclude the requisite predominance was missing where there was insufficient evidence misclassification was the rule rather than the exception.

Plaintiffs contend the trial court erred in finding *Marlo v. United Parcel Service, Inc., supra,* 251 F.R.D. 476 was analogous. More specifically, plaintiffs assert the trial court erroneously concluded the evidentiary record in the present case, as in *Marlo,* comprised solely of competing declaration testimony. Plaintiffs further assert the trial court disregarded evidence defendants had conducted surveys of manager job duties and had concluded the surveys supported their exemption decision. We disagree with plaintiffs'

characterization of the trial court's decision. We will not and do not presume that the trial court disregarded evidence in the record. (See *Bowman v. City of Petaluma* (1986) 185 Cal.App.3d 1065, 1082 [230 Cal.Rptr. 413] [trial court presumably did not consider evidence that was not admitted]; *Taylor v. Taylor* (1959) 167 Cal.App.2d 120, 126 [334 P.2d 201] ["We cannot presume that evidence not in the record was considered by the trial court."].)

■ Plaintiffs note defendants surveyed their employees as to time spent on a finite list of tasks before concluding managers as a group were exempt. Plaintiffs argue defendants cannot on one hand assert they have determined, based on job activities, that all managers are exempt but on the other hand argue a court must examine each individual's tasks to determine whether that person is exempt. This argument was answered in *Campbell v. PricewaterhouseCoopers, LLP* (E.D.Cal. 2008) 253 F.R.D. 586, 603–604, as follows: "Some courts . . . have determined that it is unfair for an employer to 'on the one hand, argue that all [class members] are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each [class member] in order to determine whether that individual is "exempt." ' [Citation.] But, under *Walsh* [*v. IKON Office Solutions, Inc.* (2007) 148 Cal.App.4th 1440, 1461 [56 Cal.Rptr.3d 534],] there is no estoppel effect given to an employer's decision to classify a particular class of employees as exempt—whether right or wrong, or even issued in bad faith; instead, the only legally relevant issue to alleged misclassification is whether the exemption in fact applies. If the duties between class members are similar, the exemption inquiry is likely susceptible to common proof, [citation], but if the duties are not sufficiently similar, then the inquiry is unlikely to be susceptible to common proof, [citation]." (Fn. omitted.) The *Campbell* court further explained: "It may be intuitively unfair to permit an employer, who has historically classified a particular group of employees as exempt based on a uniform rule, to argue in the context of litigation that the exemption inquiry will require an individualized analysis. But the assumption behind such an intuitively appealing argument is that an employer should somehow be bound by its prior position—which is foreclosed by *Walsh*. '[I]n resolving questions of California law, this court is bound by the pronouncement of the California Supreme Court . . . and the opinions of the California Courts of Appeal are merely data for determining how the highest California court would rule . . . [but] the opinion of the Court[s] of Appeal[s] on questions of California law cannot simply be ignored.' [Citation.]" (*Campbell v. PricewaterhouseCoopers, LLP, supra*, 253 F.R.D. at p. 603, fn. 17; accord, *Vinole v. Countrywide Home Loans, Inc.* (9th Cir. 2009) 571 F.3d 935, 945–946 [refusing to adopt rule that class certification is warranted whenever an employer uniformly classifies a group of employees as exempt].)

## IV. DISPOSITION

The order denying class certification is affirmed. Defendants, El Torito Restaurants, Inc., and Real Mex Restaurants, Inc., are to recover their costs on appeal, jointly and severally, from plaintiffs, Hermilo Arenas, Marcelo Cruz Garcia, Alberto Muratalla, Elissa Williams, Michelle Carroll, Ruben Hinojo and Mitch Ryan.

Mosk, Acting P. J., and Kriegler, J., concurred.