[Civ. No. 50925. Second Dist., Div. Five. Aug. 11, 1978.]

HARRY ALTMAN et al., Plaintiffs and Appellants, v.
MANHATTAN SAVINGS BANK, Defendant and Respondent.

762

COUNSEL

Mazirow, Schneider, Forer & Lawrence, Mazirow, Schneider & Forer, Gary B. Torpy and Stanley M. Clark for Plaintiffs and Appellants.

Murchison & Cumming, Ronald R. McQuoid and Bonnie S. Bass for Defendant and Respondent.

**OPINION**

**HASTINGS, J.**—This is an appeal in a class action suit from a superior court judgment dismissing the unnamed class members.

The action was commenced by plaintiffs and appellants Harry and Melanie Altman on behalf of 458 homeowners and trustors under certain deeds of trust. Defendants are Manhattan Savings Bank (Manhattan), respondent, the beneficiary under the deeds of trust, and Bradley Mortgage Company (Bradley), who was appointed by Manhattan to

service plaintiffs' accounts, to collect monthly payments, and to hold certain impound funds in trust for later payment of real property taxes, insurance, and special assessments.

On or about June 10, 1975, each of the homeowners received notices from the Los Angeles County Tax Collector that their second installment of the 1975 property taxes had not been paid. Bradley, without Manhattan's knowledge, had failed to make the payments. Manhattan first learned of the delinquencies on Monday, June 23, 1975. By Thursday, June 26, 1975, Manhattan had notified the county tax collector by mailgram that it would pay all of the delinquent taxes and by Monday, June 30, 1975, the taxes were in fact paid. The present action was filed on June 25, 1975. The first cause of action is for breach of fiduciary duty and the second is for damages based on negligence. The third cause of action for declaratory relief was mooted by the payment by Manhattan of the delinquent taxes to the tax assessor on June 30, 1975.

On July 21, 1976, Manhattan noticed a hearing pursuant to Rules of the Manual for the Conduct of Pretrial Proceedings in Class Actions in the Los Angeles Superior Court. Briefs were filed and the matter was orally argued. The court dismissed the unnamed members of the class without prejudice. The order of dismissal contains no statement of reasons.

It is appellants' contention that the court dismissed the unnamed class members on the theory that general damages for emotional distress are not recoverable in a class action, which, they claim, is error. Respondent states that in the absence of findings or a statement of reasons, the exact reason is unknown but the dismissal must be affirmed because the action failed to establish a "community of interest" between all members of the class which is required for the maintenance of a class action suit.

Appellants, in their opening brief, have urged several reasons for reversal. All of them, however, merge into one basic argument, namely, that the right to recover, whether individual or class, is based on the "primary right theory"[1] and the court had no right in considering the issue of damages with the issue of liability, even though the problems of

---

[1] 3 Witkin, California Procedure (2d ed. 1971) Pleading, section 22, page 1707, states: "California follows the 'primary right theory' of Pomeroy: 'Every judicial action must therefore involve the following elements: a *primary right* possessed by the plaintiff, and a corresponding *primary duty* devolving upon the defendant; a *delict or wrong* done by the defendant which consisted in a breach of such primary right and duty; a *remedial right* in favor of the plaintiff, and a remedial duty resting on the defendant springing from this

damages in a class action suit could be monumental. The primary right theory, appellants claim, permits bifurcation of the two issues (Code Civ. Proc., § 598), and if the issue of liability can be determined by facts common to all parties in the class, the court *must* certify the class for trial and *any* consideration of the problems connected with damages is improper. Appellants cite *Vasquez* v. *Superior Court*, 4 Cal.3d 800, 815 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d. 513], in support of this argument, where the court states: "The final element of plaintiffs' cause of action is damages. *Daar* makes it clear that although ultimately each class member will be required in some manner to establish his individual damages this circumstance does not preclude the maintenance of the suit as a class action." Appellants then cite *Daar* v. *Yellow Cab Co.*, 67 Cal.2d 695, 707 [63 Cal.Rptr. 724, 433 P.2d 732], which states: " '. . . for related causes of action to preclude representative litigation they must be separate and distinct in the sense that every member of the alleged class would have to litigate numerous and substantial questions determining his individual right to recover against the named defendant or defendants . . .' " In other words, if the individual class members have separate causes of action as distinguished from different claims of damages, only then is class recovery denied. Appellants claim that their complaint seeks damages for negligence and a breach of a fiduciary duty which rests on the same facts common to each of the 458 members of the class; therefore, members of the class do not have separate causes of action.[2]

## DISCUSSION

In the absence of findings of fact and conclusions of law, it is our responsibility to affirm the trial court if it employed the proper standards in decertifying the class. ■ "The trial court is vested with discretion to determine whether the plaintiff has sustained his burden of establishing the factual predicate for class action treatment. So long as that court applies proper criteria and its action is founded on a rational basis, its ruling must be upheld." (*Hamwi* v. *Citinational-Buckeye Inv. Co.*, 72 Cal.App.3d 462, 472 [140 Cal.Rptr. 215].) "[P]laintiffs purporting to

delict, and finally the *remedy or relief* itself. . . . Of these elements, *the primary right and duty and the delict or wrong combined constitute the cause of action. . . .' "

[2]It is appellants' premise that proof of breach of a fiduciary duty by Manhattan to the class members is practically a foregone conclusion because Manhattan stipulated that there was a fiduciary relationship of Manhattan and Bradley to the class and that Bradley was an agent of Manhattan. Appellants then concede that the damages to most of the class members will be small, but they claim this is all the more reason for certifying it as a class action suit so as not to burden the superior and municipal courts with the prospect of 458 separate trials.

represent the class have the burden of establishing that there is an ascertainable class and *a well-defined community of interest in the questions of law and fact involved in the litigation. . . .* [T]he trial court's conclusion that plaintiffs failed to satisfy their burden must be sustained if founded on a rational basis." (*Id.,* at p. 466.) (Italics added.)

We agree with appellants that the cause of action of each class member in this case is not separate and distinct. Proof of defendant's breach of duty to each plaintiff rests on the same facts and can quite easily be determined. We are not of the opinion, however, that the "primary right theory" or the law cited from *Vasquez* and *Daar* precludes a dismissal of the unnamed class members in the factual situation facing us here. It is true that in *Vasquez* and *Daar* there is language, when viewed in isolation, that would support a division of the issue on liability from the question of damages. We do not believe, however, that a reading of these two cases stands for the proposition that a class action *must* be certified for trial when it is only the damage issue, as to each party, that is complex. ■ A class action is appropriate only when there exists a "sufficient community of interest" in "common questions of law and fact" so that proceeding in the class action form will result in "substantial benefits both to the litigants and to the court." (*Hamwi, supra,* at p. 471, citing *City of San Jose v. Superior Court,* 12 Cal.3d 447, 460 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].)

In certain cases, and this is one, the determination of each class member's damages can be so diverse that there does not exist a community of interest in common questions of law and fact.

■ Damages for emotional distress are, to a certain extent, sui generis, in that they are not awarded unless they meet the "substantial damages" standard. In *Crisci* v. *Security Ins. Co.,* 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173], a 70-year-old widow suffered a $101,000 judgment after her insurance company wrongfully refused to settle her claim. To satisfy the judgment, she was forced to give up all of her property and take up babysitting jobs. She was awarded damages for mental suffering and the court outlined the "substantial damage" standard as follows (p. 434): "The principal reason for limiting recovery of damages for mental distress is that to permit recovery of such damages would open the door to fictitious claims, to recovery for mere bad manners, and to litigation in the field of trivialities. [Citation.] Obviously, where, as here, the claim is actionable and has resulted in substantial damages apart from those due to mental distress, the danger of fictitious

claims is reduced, and we are not here concerned with mere bad manners or trivialities but tortious conduct resulting in substantial invasions of clearly protected interests." The court is saying that the tortious conduct of the defendant must result in substantial damage to the plaintiff apart from those resulting from emotional distress. This approach has since been followed in *Jarchow* v. *Transamerica Title Ins. Co.,* 48 Cal.App.3d 917 [122 Cal.Rptr. 470],[3] and in *Truestone, Inc.* v. *Travelers Ins. Co.,* 55 Cal.App.3d 165, 170 [127 Cal.Rptr. 386], the court reiterates: "The hurdle to recovery for injury to the peace of mind . . . is the general rule that damages for unintentional infliction of emotional distress are not recoverable absent other damage to person or property to which they are related."

In our present case, there are numerous other injuries that could cause substantial damage to the class members apart from the emotional distress. One example would be the loss of sale of a home because of Bradley's failure to timely pay the taxes. This would then require evidence on whether a later sale brought a higher or lower price for the property. Another example would be a claim of damage to one's credit rating with proof of the nature and extent of the damages incurred as a result of the denial of said credit. These examples illustrate the problem. Other alleged injuries would also require time-consuming proof of substantial damage. It can readily be seen that the simplified formula for assessing damages propounded by appellants (*infra*) is not realistic to a class action when the primary concern is to collect damages for emotional distress. The testimony of each class member is required, first to demonstrate substantial damage to either property or person as a condition precedent to recovery for emotional distress, and second the complex proof unique to each member on his or her damages for loss of peace of mind. In *Stilson* v. *Reader's Digest Assn., Inc.,* 28 Cal.App.3d 270, 273-274 [104 Cal.Rptr. 581], the court was also concerned with the amount of evidence required for establishing damages for mental anguish. It said: "The gist of the cause of action here asserted is a wrong 'resulting in injury to the feelings'; it 'concerns one's own peace of mind'; and the injury is 'mental and subjective.' (*Kelly* v. *Johnson Publishing Co.,* 160 Cal.App.2d 718, 721 [325 P.2d 659].) . . . This necessarily would involve evidence of the mental and subjective state of each plaintiff . . . . [¶] We recognize, of course, the rule that 'although ultimately each class member will be required in some manner to establish his individual

---

[3]See further comment on this case and an outline of the history behind the "substantial damage" rule in *Emotional Distress and Substantial Damages: Jarchow v. Transamerica Title Insurance Co.* (1976) 8 Sw.U.L.Rev. 203.

damages this circumstance does not preclude the maintenance of the suit as a class action.' [Citation.] But plaintiffs must 'demonstrate that the questions which they will be required to litigate separately are not numerous or substantial.' [Citation.] '[S]ubstantial benefits resulting from class litigation, both to the litigants and to the court, should be found before the imposition of a judgment binding on absent parties can be justified.' (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at p. 713.)" And in *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447, the court stated at pages 459-460: "Holding that a class action cannot be maintained where each member's right to recover depends on facts peculiar to his case, *Weaver* [*Weaver* v. *Pasadena Tournament of Roses,* 32 Cal.2d 833 (198 P.2d 514)] remains viable in this state. The rule exists because the community of interest requirement is not satisfied if every member of the alleged class would be required to litigate numerous and substantial questions *determining his individual right to recover following the 'class judgment' determining issues common to the purported class.* . . . (Italics added.)

■ "In determining whether sufficient community of interest exists to justify the maintenance of a class action, we start from certain settled premises: Before the imposition of a judgment binding on absent parties can be justified, it must be shown that substantial benefits both to the litigants and to the court will result. (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695, 713; *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 810.) The burden of such a showing falls on plaintiff (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 820), and the ultimate determination of whether the class action is appropriate turns on the existence and extent of common questions of law and fact. As noted above, each member must not be required to individually litigate numerous and substantial questions to determine his right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants. [Citation.]"

Appellants argue that the average amount of damage to each class member will be small and that this simplifies the problem. They claim computation of emotional distress damage is not more difficult than in a consumer fraud case, securities fraud case, or civil antitrust action, and suggest that the jury, from lay testimony, may employ reasonable

inferences on the degree of suffering experienced.[4] We disagree. In the cases cited by appellants in support of this argument, damages to the class were determined without difficulty. For example, when a seller's price for his product or service is excessive because it exceeds a prescribed rate or results from an antitrust conspiracy, damages can readily be calculated by determining the amount of the excess and multiplying by the volume of the defendant's sales. Damages can be similarly calculated in securities fraud cases involving purchases of a security at a price which is inflated by the defendant's misrepresentation.[5] An individual member seeking damages merely supplies evidence of his particular purchases or transactions that determine his recovery. The unclaimed damages are usually applied by the court to aid the public consumer.[6]

As we have demonstrated above, damages cannot be easily calculated and each member must litigate numerous and substantial questions to determine his right to recovery. Under the unique facts of this case, we conclude the required community of interest is absent and the court's dismissal of the unnamed members was correct.

Appellants finally argue the action should be certified in order to implement the private regulatory function of the tort law. In substance, they see their action as analogous to a consumer fraud case. They rely on several cases,[7] all of which are aimed at controlling acts of corporate malfeasance. In general, they are mass wrong situations where there are large numbers of unidentified members who would have only small or nominal damages. The individual consumer with only small damages will

[4]Appellants justify computation of damages in this manner on the theory that their action falls within the type of class action that is designed to control acts of corporate malfeasance, i.e., "consumer protection." In the great majority of these cases, the damages to the unnamed members are so small they will not come forward to claim them. However, the damages in toto are substantial, and when they can be computed mathematically, as in *Daar v. Yellow Cab Co., supra,* 67 Cal.2d 695, the mass wrong committed by the defendant is quickly corrected. The damages not claimed by individuals are used to benefit them indirectly. In *Daar,* for example, $1.2 million was used to reduce cab fares for a specified period of time.

[5]For further discussion on this issue see Landers, *Of Legalized Blackmail and Legalized Theft: Consumer Class Actions and the Substance-Procedure Dilemma* (1974) 47 So.Cal.L. Rev. 842.

[6]This is commonly referred to as the "fluid class recovery." See 47 So.Cal.L.Rev. 842, 866.

[7]Cases primarily relied upon are *In re Memorex Security Cases* (N.D.Cal. 1973) 61 F.R.D. 88, 103; *Tunkl v. Regents of University of California,* 60 Cal.2d 92, 98-101 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693]; and *Connor v. Great Western Sav. & Loan Assn.,* 69 Cal.2d 850 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224].

not seek redress through an expensive lawsuit; therefore, the seller retains the fruits of its wrongdoing. The class action suit remedies this problem. The total damages can be mathematically determined and the award has a "therapeutic" benefit in that defendant will correct its wrongful ways to escape further liability.[8] Most consumer fraud and antitrust cases are dealing with intentional wrongdoing, or continuing acts of negligence. It is true class actions are permitted in mass accident cases, but most class actions are primarily concerned with punishing and correcting continuing wrongful conduct. There are now statutes in many states that specifically provide remedies, in addition to the traditional class action suit, that combat deceptive and unconscionable consumer practices. California is one. (See Civ. Code, § 1750 et seq.) Apropos to this case is the fact that the California statutes, in addition to authorizing suit for various wrongful practices, also make available to defendants defenses of attempted rectification and bona fide error (see Civ. Code, §§ 1770, 1782, subds. (a) and (c).) Our present case is not covered by the above California code sections, but we believe an analogy can be drawn. Here, we do not have a case of intentional and continuing misconduct on the part of Manhattan. One act of wrongdoing by its agent is involved, and Manhattan quickly acted to remedy the problem. It is very unlikely it will happen again. In other words, we cannot agree with appellants that this case should be certified as a class action solely for the reason that it will have a therapeutic benefit on Manhattan and other members of the savings and loan industry. It just does not fit the mold that plaintiffs seek to place it in.

The judgment dismissing the unnamed class members is affirmed.

Kaus, P. J., and Ashby, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 18, 1978.

---

[8]See McCall, *Due Process and Consumer Protection: Concepts and Realities in Procedure and Substance—Class Action Issues* (1974) 25 Hastings L.J. 1351.