[Civ. No. 50515. First Dist., Div. Three. July 19, 1982.]

CHARLENE GROGAN-BEALL, Plaintiff and Appellant, v. FERDINAND ROTEN GALLERIES, INC., et al., Defendants and Respondents.

COUNSEL

Stark, Stewart & Simon, Stark, Stewart, Wells & Robinson, John F. Wells, Fonda Karelitz, Banker & Linderman and John F. Banker for Plaintiff and Appellant.

McCutchen, Doyle, Brown & Enersen, William H. Armstrong and Jane E. Cosgriff for Defendants and Respondents.

OPINION

**SCOTT, Acting P. J.**—Plaintiff-appellant Charlene Grogan-Beall brought this action as a class action against Ferdinand Roten Galleries and MacMillan, Inc., for failure to comply with the disclosure-disclaimer provisions of the California Sale of Fine Prints Act (hereafter the Act). (Civ. Code, §§ 1740-1745.) After a jury trial, judgment was entered in plaintiff's favor; however, the court granted defendants' motion to decertify the class. ██ █ Plaintiff appeals from the order decertifying the class,[1] and from that portion of the judgment requiring tender to defendants of the print which she purchased as a condition of her recovery of treble damages for wilful violation of the Act. (Civ. Code, § 1745, subd. (b).)

*The California Sale of Fine Prints Act:*
*Civil Code Section 1740 et seq.*

The Act was passed in 1970 in an effort to enable prospective purchasers to make informed decisions as to the value of a modern print. Value varies significantly depending on the artist, the size, date and number of the edition, and whether the plate from which the print came has been rendered incapable of producing further editions. (Duffy, *Disclosure Requirements in Connection with the Sale of Fine Art Prints* (1973) 48 State Bar J. 528 [hereafter cited as *Disclosure Requirements*]; see also Notes, *Art Print Legislation in California: A Critical Review* (1973) 25 Stan.L.Rev. 586 [hereafter cited as Note].) The Act attempts to aid the consumer in judging a print's uniqueness or scarcity by imposing on the print dealer the burden of disclosure or disclaimer of certain details relevant to the print's value.

---

[1]Decertification orders have been held appealable as an exception to the one final judgment rule. (*Morrissey* v. *City and County of San Francisco* (1977) 75 Cal.App.3d 903, 907 [142 Cal.Rptr. 527]; see also *Green* v. *Obledo* (1981) 29 Cal.3d 126, 149, fn. 18 [172 Cal.Rptr. 206, 624 P.2d 256].)

The Act applies to sales of works printed after its effective date of July 1, 1971, and prohibits the offering or sale of prints, whether direct or by catalog, in violation of its provisions. More specifically, the statutory scheme provides that, "No catalog, prospectus, or circular offering fine prints for sale may be knowingly published or distributed unless it clearly and conspicuously discloses certain relevant informational detail concerning each edition of the prints so offered. And no fine print, or prints, may be knowingly offered for sale or sold by any person, at wholesale or at retail, unless a written invoice or receipt for the purchase price, or a certificate furnished to the purchaser, clearly and conspicuously discloses all of the same relevant informational detail.

"If a person offering prints by means of a publication, or a seller, disclaims knowledge as to any relevant detail, he must so state, specifically and categorically with regard to each such detail, to the end that the purchaser is enabled to judge the degree of uniqueness or scarcity of the print. Describing the edition or the print as a reproduction eliminates the need to furnish further informational detail, unless the edition or the print was allegedly published in a signed, numbered, or limited edition, or any combination thereof, in which case all of the informational detail must be furnished.

"A person purchasing a fine print from one who offers or sells it in violation of the statute may sue to recover the consideration paid for the print, with interest at the legal rate, upon tender of the print. And if a person wilfully offers or sells a fine print in violation of the statute, the purchaser may recover three times the amount of consideration paid for the print. An action must be brought within one year after discovery of the violation on which the action is based, and, in no event, more than three years after the print was sold." (13 Cal.Jur.3d, Consumer and Borrower Protection Laws, § 53, pp. 770-771.)

The Act does not indicate who shall bear the burden of proof as to the date of printing, an element basic to jurisdiction and a difficult burden for either party (see Note, *supra*, at p. 598); nor does it specify when the required information must be supplied to the buyer.

## The Facts

In October 1972, plaintiff purchased four unframed prints from defendant Roten Galleries at an art exhibition held on the University of California Berkeley campus. Each print was represented to be a certain

number of a limited edition.[2] Other than the numerical indication on the face of the print, no information regarding the print's history or uniqueness was provided at the time of purchase, nor was there any accompanying disclaimer of relevant information.

In February 1974, plaintiff ordered another print which was represented in the Roten catalog as one of a limited edition of 50 prints. Upon receipt of the print, plaintiff noticed that it was numbered one of twenty. After inquiry made to the company president, plaintiff learned that her print was one of a series of "artist's proofs" not disclosed in the catalog, printed to supplement the limited edition which had been sold out.[3] By letter dated February 25, 1974, she informed Roten of the Act and its requirements.

Plaintiff made two subsequent purchases from Roten, in April and October of 1974. Twenty days after the April purchase she received an incomplete certificate of authenticity; three months after the October purchase she received the corresponding certificate of information.

It was not Roten Galleries' practice in 1972 to provide buyers with certificates bearing the statutory disclosure. Their catalogs for 1971 through 1974 did not provide the required information.[4] By October 1974 Roten did indicate on its sales tickets that certificates would be provided on request, but the information was not being routinely furnished at the time of sale.

In October 1977, plaintiff brought this action on behalf of herself and other California print buyers under California's general class action statute, Code of Civil Procedure section 382, for redress pursuant to the Act. The class, conditionally certified over defendants' objection, was

---

[2]Typically, fine art prints are numbered according to their relative position in a limited series produced by a print shop in agreement with the artist. For example, the 25th print of an edition of 50 would be numbered 25/50. All other factors being equal, an original print which is one of a small edition is more valuable than one of an edition of 50, since the quality diminishes as the plate block becomes worn in a large edition. (See Note, *supra*, at p. 589.)

[3]Artist's proofs are those prints run off in addition to the numbered prints of a limited edition and are intended for the artist's personal use. They are a potential source of commercial abuse if many are produced and sold in addition to the numbered prints. (*Id.*, at p. 587.)

[4]The contents of the statute were not widely known by either the general public or those in the industry, at least in the early 70's. (*Disclosure Requirements, supra*, 48 State Bar J. at p. 530.)

defined as all persons who, between February 1972 and February 1975, purchased from defendants a fine print which was printed after July 1, 1971,[5] and sold unframed or framed above the statutory minimum price.

Trial commenced in September 1979. Prior to submission of the case to the jury, defendants moved to decertify the class; the court deferred its decision on the motion for posttrial briefing. The jury returned a special verdict, finding that defendants nonwilfully violated the Act in connection with the sale of one print, and wilfully violated the Act in the sale of a second. After a hearing, the court then ordered decertification of the class. Final judgment was entered January 30, 1980, ordering that plaintiff recover from defendants the consideration paid for one print, plus interest ($45.15), and three times the consideration paid for the other, plus interest ($121.34). Recovery for each was conditioned upon tender by plaintiff of the print to defendants.

### The Decertification Order

Plaintiff's first contention is that the court's decertification of the class was erroneous because it was based on a misinterpretation of the Act. Plaintiff also points to recent California authority setting guidelines for decertification in the late stages of litigation, contending that defendants' motion for decertification at the conclusion of the trial was untimely.

■ The showing required for decertification of a class is within the trial court's discretion, provided that correct criteria are applied. (*Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355, 361 [134 Cal.Rptr. 388, 556 P.2d 750]; *Altman* v. *Manhattan Savings Bank* (1978) 83 Cal.App.3d 761, 765 [148 Cal.Rptr. 100]; *Hamwi* v. *Citinational-Buckeye Inv. Co.* (1977) 72 Cal.App.3d 462, 472 [140 Cal. Rptr. 215].) Where the trial court applies proper criteria in decertifying the class and its action is founded on a rational basis, its ruling will be upheld. (*Hamwi, supra*, at p. 472.) In the absence of findings of fact and conclusions of law, it is the responsibility of the appellate court to affirm the trial court if it employed the proper standards in decertifying the class. (*Altman, supra*, 83 Cal.App.3d at p. 765.)

■ A consumer class action is appropriate so long as the issues that may be jointly tried, as compared to those requiring separate adjudica-

---

[5]The Act exempts prints printed before July 1, 1971. (Civ. Code, § 1741.)

tion, justify the maintenance of the suit as a class action. (See *Vasquez v. Superior Court* (1971) 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]; 13 Cal.Jur.3d, Consumer and Borrower Protection Laws, § 2, p. 695.)

But it is well settled that, "[a] class action is maintainable only when there exists a community of interest in common questions of law and fact among the claimants to be represented, and it is likely that the combination of claims in a single action will substantially benefit both the claimants and the courts. [Citations.] If each member of the class will be required to litigate numerous and substantial issues affecting his individual right to recover damages after the common questions have been determined, the requirement of community of interest is not satisfied. [Citations.] [¶] A dispute over the propriety of a class action requires the court to evaluate the factors necessarily involved in the particular action." (*Rose v. Medtronics, Inc.* (1980) 107 Cal.App.3d 150, 154-155 [166 Cal.Rptr. 16]; see also *D'Amico v. Sitmar Cruises, Inc.* (1980) 109 Cal.App.3d 323 [167 Cal.Rptr. 254]; *Bartlett v. Hawaiian Village, Inc.* (1978) 87 Cal.App.3d 435 [151 Cal.Rptr. 392].)

■ Although the trial court did not state its reasons for the decertification order, it is clear from the record that the dispute over class treatment turned on the issue of commonality of interest in law and fact. Defendants' moving papers focused on the assertion that defendants' liability to each unnamed plaintiff would have to be individually litigated in various respects. Defendants relied on *Weaver v. Pasadena Tournament of Roses* (1948) 32 Cal.2d 833 [198 P.2d 514] and *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223] to argue that the facts developed at the trial, nearly two years after the original conditional certification, showed that individual issues dominated the case. It is clear that the trial court's decertification order was based on insufficient commonality to justify class treatment.

Plaintiff asserts that the court's order was based on a misinterpretation of the Act with respect to the burden of proof of the date of printing and the permissible time for disclosure. We need not resolve that dispute. Regardless of who bears the burden of proof to the date of printing, determining that date would remain a substantial individual issue in the litigation, and regardless of when the Act requires disclaimer or disclosure, proof of the nature and extent of certification or lack thereof also would be an individual factual issue. Since each claimant

must litigate a number of substantial fact questions peculiar to his right of recovery, it is not reasonably possible to establish the necessary community of interest among the class members. Therefore, decertification of the class was proper. (See *Bartlett v. Hawaiian Village, Inc., supra*, 87 Cal.App.3d at p. 440.)

Plaintiff also attacks the decertification order on procedural grounds, contending that its untimely disposition violates the principles set forth in *Green v. Obledo* (1981) 29 Cal.3d 126 [172 Cal.Rptr. 206, 624 P.2d 256]. We disagree. That case involved a state welfare regulation which deprived a class of plaintiff welfare recipients of certain benefits. The trial court had originally ordered the class certified, granted plaintiffs' motion for summary judgment and declared the regulation invalid. On defendants' subsequent motion to decertify, the court limited the class to present and future welfare recipients, thereby denying retroactive relief to certain original class members. The Supreme Court reversed and remanded, stating that plaintiffs were entitled to have the original class they represented reconstituted. (*Green, supra*, at pp. 148-149.)

Plaintiff's reliance on *Green* is misplaced. First, defendants in *Green* failed to contest plaintiffs' original motion for class certification, and did not move for decertification until after a determination against them on the merits. The court sharply criticized that approach as "no-lose litigation strategy," and also concluded that defendants in effect had waived any right to move for decertification (*Green, supra*, at pp. 147-148.) In sharp contrast, defendants in this case both objected to the original certification, and moved to decertify prior to submission of the case to the jury.

Second, while the court in *Green* held that generally a motion to decertify must be determined before the decision on the merits, it also declined to declare that an absolute rule. ■ The trial court does retain jurisdiction to decertify a class even after a decision on the merits, providing there has been a showing of changed circumstances or newly available evidence making continued class action treatment improper; the defendants in *Green* made no such showing. (*Green, supra*, at p. 148.) Instead, the trial court's partial decertification of the class in that case appears to have been based on an arbitrary cut-off date rather than on any absence of common factual or legal questions. (*Id.*, at p. 149, fn. 18.) In this case the court's original certification order was only conditional. Prior to submission of the case to the jury, defendants renewed their opposition to certification, arguing that the evidence at

the trial had served to illustrate that uncommon questions of fact were central to a determination of their liability. Defendants established a proper reason for decertification, and the trial court's order was proper.

### The Tender Requirement

■ Plaintiff next assigns error to that portion of the judgment requiring tender of the print before recovery of damages for the wilful statutory violation. She contends that by failing to expressly repeat the tender requirement in subdivision (b) of section 1745, the Legislature did not intend it to affect the right to treble damages; she argues that a tender requirement deprives the purchaser of compensation for costs of framing. We disagree.

Chapter three of the Act is entitled "Remedies and Penalties." Subdivision (a) of section 1745 creates a rescissionary remedy for the consumer injured by failure to comply with the statute. It provides that liability for violation of the Act shall consist of the consideration paid for the print, plus interest, but also requires tender before recovery for the violation.[6] Subdivision (b) is clearly the penalty provision of the statute, permitting the purchaser to recover "an amount equal to three times the amount required under subdivision (a)" where the violation is found to be wilful. Subdivision (b) recovery is dependent on subdivision (a), for the issue of assessing the penalty is not reached unless and until the right to damages is established under subdivision (a). Subdivision (a) requires plaintiff to tender in order to recover for any violation of the Act; a fortiori, plaintiff must also tender in order to recover for a wilful violation. It would be inconsistent to allow recovery of additional, punitive damages for one *type* of violation without requiring compliance with a necessary prerequisite to recovery for any violation at all.

Appellant's argument that the Legislature would have expressly repeated the tender requirement in subdivision (b) had it desired it to be operative therein, is without merit. The remedial provision is but one, with three subdivisions. Reading the statute as a whole and in light of

---

[6]Section 1745 reads in pertinent part: "(a) A person who offers or sells a fine print in violation of this title shall be liable to the person purchasing such fine print from him, who may sue to recover the consideration paid for such print, with interest at the legal rate thereon, upon the tender of the print. [¶] (b) In any case in which a person willfully offers or sells a fine print in violation of this title, the person purchasing such fine print may recover from the person who offers or sells such fine print an amount equal to three times the amount required under subdivision (a)."

common sense, we find it apparent that subdivision (b) is dependent on subdivision (a). To repeat the tender requirement would create unnecessary surplusage. (7) Words must be construed in context, and statutes must be harmonized internally to the extent possible. Interpretive constructions which render some words surplusage, defy common sense, or lead to mischief or absurdity, are to be avoided. (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal. Rptr. 676, 598 P.2d 836].) Moreover, an interpretation requiring tender for a wilful violation is consistent with general principles of mutual restitution in a rescission action. (See, e.g., *Alder* v. *Drudis* (1947) 30 Cal.2d 372, 384-385 [182 P.2d 195]; cf. *Paularena* v. *Superior Court* (1965) 231 Cal.App.2d 906, 914 [42 Cal.Rptr. 366]; see also cases collected in 9 West's Ann. Civ. Code (1973 ed.) § 1692, p. 566.)

We are not persuaded by plaintiff's argument that tender should not be required for a wilful violation because the statute fails to compensate the plaintiff for costs of framing. The purpose of the penalty provision is to punish and deter the defendant, not to compensate the plaintiff. (See generally, 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 848-849, pp. 3142-3143.) Had the Legislature intended to provide compensation for incidental expenditures, it would not have limited recovery to a refund of the purchase price plus interest, or to a statutory penalty derived therefrom, in section 1745.

### Conclusion

The order of the trial court decertifying the conditional class of plaintiffs is affirmed. The portion of the judgment requiring tender before recovery of damages for the wilful violation of the California Fine Prints Act is affirmed.

Feinberg, J., and Barry-Deal, J., concurred.