[No. B189272. Second Dist., Div. Seven. Oct. 22, 2008.]

BRYAN HARPER et al., Plaintiffs and Appellants, v.
24 HOUR FITNESS, INC., Defendant and Respondent.

**COUNSEL**

Law Offices of Stephen Glick, Stephen Glick; Daniels, Fine, Israel & Schonbuch, Paul R. Fine, Scott A. Brooks; Law Offices of Ian Herzog, Ian Herzog and Evan D. Marshall for Plaintiffs and Appellants.

Jeffer, Mangels, Butler & Marmaro, Susan Allison, Richard A. McDonald and Ryan S. Mauck for Defendant and Respondent.

OPINION

**PERLUSS, P. J.**—Putative class representatives Bryan Harper and Mark Salzwedel appeal from the trial court's order decertifying a limited class that had previously been recognized for their unfair competition claims under Business and Professions Code sections 17200 and 17500 (UCL claims)[1] challenging a form contract 24 Hour Fitness, Inc., used to enroll new members. Because the trial court's decertification order is largely predicated on its erroneous legal assumptions concerning the scope of relief available in an individual action under sections 17200 and 17500, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Dispute Regarding Membership Renewal Terms*

24 Hour Fitness operates workout and health club facilities throughout California. From 1996 until 2000 24 Hour Fitness offered memberships to use its facilities under a form contract that authorized a prepaid membership with a guaranteed renewal rate, the V.9.96 contract. Harper and Salzwedel became 24 Hour Fitness members during this period and entered into prepaid, multiyear V.9.96 contracts.

The parties dispute the terms for the renewal period. Harper and Salzwedel contend the right to renew extended for three years, the same period as the term of their initial memberships; 24 Hour Fitness maintains the renewal clause provided for annual renewals only. Upon expiration of their initial membership periods, 24 Hour Fitness refused to allow Harper and Salzwedel to renew for a new three-year term at the guaranteed rate, permitting renewals at the specified rate for an annual term only.

### 2. *The Class Action Complaint*

In February 2001 Harper and Salzwedel initiated this lawsuit and on June 29, 2001 filed a third amended putative class action complaint on behalf of themselves and others similarly situated, alleging 24 Hour Fitness's contracts and sales techniques were deceptive and falsely implied that members who prepaid their dues for the entire contract term were entitled to keep their dues at the same rate if they renewed their membership when the initial term expired. The complaint alleged causes of action for unfair competition and false advertising in violation of sections 17200 and 17500, unfair or deceptive practices under the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.), breach of contract and common law fraud and deceit.

---

[1] Statutory references are to the Business and Professions Code unless otherwise indicated.

In June 2002 Harper and Salzwedel filed a motion to certify two classes, one consisting of all persons in California who had entered into prepaid membership contracts with 24 Hour Fitness, whether or not the individuals had renewed their memberships; the second consisting of all persons in California who entered into any contract with 24 Hour Fitness that contained several provisions Harper and Salzwedel contended were unconscionable. In their motion Harper and Salzwedel argued the contract provisions and associated representations presented identical violations of law and established a common factual predicate for all class members. In response 24 Hour Fitness asserted that issues relating to contract interpretation and the negotiation of particular contracts presented questions requiring individual examination of the contracts in conjunction with parol evidence bearing on the contract terms.

### 3. The Original Class Certification Order

On March 3, 2003 the trial court granted limited class certification, allowing class treatment for Harper and Salzwedel's UCL claims, but denying class certification as to their unconscionability claims.[2] With respect to the UCL claims class, moreover, the court restricted participation to "[t]hose persons who, on or after February 12, 1997, in the State of California, entered into a 'prepaid membership' contract on a 'V.9.96' form with 24-Hour Fitness, with an initial period exceeding 12 months, and who renewed by prepayment for additional period in the same program (that is, the same 'kind,' 'type' and 'benefits'), and who did not permanently move . . . during the term of their initial contract."

In addition, the court limited the basis for the UCL claims to the face of the V.9.96 contract form only, without reference to any alleged oral representations by 24 Hour Fitness personnel. The court explained, "Limiting the claims to this proposed class satisfies commonality of the issues of fact and law, and avoids individualized inquiry into either qualification for inclusion in the class or entitlement to damages."

With respect to whether a class action was superior to a private attorney general action, the court found the matter to be a "close question." The court determined that, although the costs of class notice were significant, a restitutionary remedy in a private attorney general action would carry many of the same costs involved in identifying those to whom restitution should be made. Ultimately, the court concluded, "[A] class action may be slightly superior to a private attorney general action."

---

[2] The order denying class certification for the unconscionability claims was affirmed by Division Eight of this court in a nonpublished opinion. (*Harper v. 24 Hour Fitness, Inc.* (Aug. 31, 2004, B166123).)

### 4. *Motions for Modification of the Class Definition*

After the trial court certified the class in March 2003, multiple attempts were made by Harper and Salzwedel and by 24 Hour Fitness to modify the definition of the class. First, Harper and Salzwedel sought to redefine the class to include their Civil Code section 1770 deceptive practices claim. On April 24, 2003 the trial court denied Harper and Salzwedel's motion, concluding they were seeking certification of an entirely different class. Next, on June 11, 2004, after 24 Hour Fitness moved to limit the class originally certified, the trial court redefined the class to exclude those members who had "bonus time" notations written on the face of their contracts. The court explained its concern about the words "bonus," "bonus time" or similar handwritten comments on the V.9.96 form contracts, "The central purpose of limiting the class to the face of the form was [to] satisfy the numerosity and typicality criteria, and given the integration clause to avoid reference to prior representations not set forth in the writing itself. . . . [¶] . . . The presence of these handwritten terms means that not all the putative class members' contracts have the same terms. [¶] . . . [¶] . . . Plaintiffs appear to simply ignore whether these notations may have any meaning. [Fn. omitted.] The Court cannot wear the same blinders."

Following additional discovery, on April 5, 2005 Harper and Salzwedel filed another motion to modify the class definition, contending the evidence they had developed showed the presence of the "bonus" words on the face of the contract did not affect the class members' renewal rights. The court denied Harper and Salzwedel's motion, stating, "[s]ince plaintiff has thus far furiously resisted any attempt to allow extrinsic evidence, the present motion represents a reversal of position which, if carried to its logical conclusion, would require redefinition of or perhaps decertification of the entire class."

Ultimately, seven attempts to change the class definition were made, three by 24 Hour Fitness and four by Harper and Salzwedel, none of which was successful. The final effort was a motion by Harper and Salzwedel, filed October 6, 2005, to expand the class to include individuals who had signed the V.7.99 form, the successor to the V.9.96 form contract that had been the focus of the litigation for the preceding four years. Harper and Salzwedel explained they had learned through further discovery, contrary to 24 Hour Fitness's representations that the renewal language at issue in the V.9.96 form had been removed from membership forms, the identical language in fact appeared in the V.7.99 form.[3] In response, the trial court issued an order to show cause why it should not decertify the class, instructing the parties to

---

[3] In its original March 2003 certification order the trial court had briefly discussed whether 24 Hour Fitness members who signed the V.7.99 form should be included in the class. "The evidence appears to indicate that the next form used by 24-Hour Fitness ('V.7.99') changed the

brief the following issues: (1) the requirement for class certification that common issues predominate; (2) the requirement that a class action be a superior method of adjudication; and (3) the requirement of typicality.

### 5. The Class Decertification Order

On January 19, 2006, following briefing and oral argument, the trial court decertified the class. As suggested by its order for further briefing, in vacating its prior order certifying a limited class for Harper and Salzwedel's UCL claims, the court reexamined the advantages of a class action for the parties and the court and reconsidered whether it was superior to proceeding by way of an individual action on the UCL claims. The court also reevaluated the issues of commonality and typicality. In particular, responding to Harper and Salzwedel's insistence that 24 Hour Fitness's computer records were inaccurate and misleading and that each form contract needed to be individually examined to determine whether it fell within the "bonus time" exclusion, the court concluded, "[I]t is clear from plaintiffs' arguments that all the presumed economies from treating the Sections 17200 and 17500 claims as class claims—that is, from not having to deal with each putative class member's contract individually—are to be swept away."

To the extent individualized review of each member's class claim now seemed to be required, the court was not persuaded by Harper and Salzwedel's contention that common questions predominated sufficiently for the continued use of a class action. More significantly, the court questioned the continued benefit or superiority of class treatment. Emphasizing the lack of progress since the original class certification order, the court found the unceasing process of attempting to define and redefine the class demonstrated the ineffectiveness of the class action: "At this point we are less than two months from the running of the five years for bringing this action to trial under CCP § 583.310. The Court issued the Certification Order over 34 months ago, but class notice still has not gone out. Indeed, to hear plaintiffs, we are today farther from giving class notice than we were on March 3, 2003 [the date of the original class certification order], because we still need to revisit the issue of class definition. [¶] . . . [¶] As this chronology makes clear, the issues of class definition and identification of the members of the class have taken on a life independent of the merits of the litigation, and indeed have apparently become the driving force."

In short, the court concluded, "[c]lass certification has ceased to be beneficial. Rather, class certification and class notice have become an obstacle to the prompt, fair, and (reasonably) economical resolution of this

wording which gives rise to this suit, and persons who signed a different form of contract do not appear to be appropriate for inclusion in a class challenging the renewal terms in V.9.96."

matter." Accordingly, the court decertified the UCL claims class. Harper and Salzwedel filed a timely notice of appeal from the order decertifying the class. (See *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27] [denial of certification motion to entire class is an appealable order]; *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699 [63 Cal.Rptr. 724, 433 P.2d 732] [trial court order that "determines the legal insufficiency of the complaint as a class suit . . . is in legal effect a final judgment from which an appeal lies"]; see also *Aguiar v. Cintas Corp. No. 2* (2006) 144 Cal.App.4th 121, 131 [50 Cal.Rptr.3d 135] (*Aguiar*).)

## DISCUSSION

### 1. *The Standards for Review of a Class Certification Order*

■ Class actions are statutorily authorized "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." (Code Civ. Proc., § 382.) "The certification question is 'essentially a procedural one that does not ask whether an action is legally or factually meritorious.' " (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96 P.3d 194] (*Sav-On Drug Stores*).) "As the focus in a certification dispute is on what type of questions—common or individual—are likely to arise in the action, rather than on the merits of the case [citations], in determining whether there is substantial evidence to support a trial court's certification order, [the reviewing court] consider[s] whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment." (*Id.* at p. 327.) " '[T]his state has a public policy which encourages the use of the class action device.' " (*Id.* at p. 340; see *Aguiar, supra*, 144 Cal.App.4th at pp. 131–132.)

■ "The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members." (*Sav-On Drug Stores, supra*, 34 Cal.4th at p. 326.) "The 'community of interest' requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Ibid.*; accord, *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089 [56 Cal.Rptr.3d 861, 155 P.3d 268].) " '[T]his means "each member must not be required to individually litigate numerous and substantial questions to determine his [or her] right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the

judicial process and to the litigants." ' " (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1108 [131 Cal.Rptr.2d 1, 63 P.3d 913].)

"A class action also must be the superior means of resolving the litigation, for both the parties and the court. [Citation.] 'Generally, a class suit is appropriate "when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer." [Citations.]' [Citation.] '[R]elevant considerations include the probability that each class member will come forward ultimately to prove his or her separate claim to a portion of the total recovery and whether the class approach would actually serve to deter and redress alleged wrongdoing.' [Citation.] '[B]ecause group action also has the potential to create injustice, trial courts are required to " 'carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts.' " [Citation.]' " (*Newell v. State Farm General Ins. Co.* (2004) 118 Cal.App.4th 1094, 1101 [13 Cal.Rptr.3d 343]; accord, *Aguiar, supra,* 144 Cal.App.4th at pp. 132–133; see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2008) ¶ 14:16, p. 14-13 (rev. # 1, 2008) [benefits of class action evaluated by (1) interest of each putative class member in controlling his or her case personally; (2) potential difficulties in managing a class action; (3) nature and extent of already pending litigation by individual class members involving the same controversy; and (4) desirability of consolidating all claims in a single action before one court].)

The trial court is generally afforded great latitude in granting or denying class certification, and we normally review a ruling on certification for an abuse of discretion. (*Sav-On Drug Stores, supra,* 34 Cal.4th at pp. 326–327.) This deferential standard of review, however, is inapplicable if the trial court has evaluated class certification using improper criteria or an incorrect legal analysis: "[A] trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made . . . .' " (*Linder v. Thrifty Oil Co., supra,* 23 Cal.4th at pp. 435–436; accord, *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 575–576 [67 Cal.Rptr.3d 468, 169 P.3d 889]; *Sav-On Drug Stores,* at pp. 326–327; see *Bartold v. Glendale Federal Bank* (2000) 81 Cal.App.4th 816, 828–829 [97 Cal.Rptr.2d 226].)

> 2. *The Decertification Order Is Based on Erroneous Legal Assumptions Concerning the Scope of Individual Actions Under Sections 17200 and 17500*

When it originally granted limited class certification in March 2003 for Harper and Salzwedel's UCL claims, the trial court characterized as a "close

question" whether a class action would be superior to a private attorney general action for a fair and efficient adjudication of the litigation. As discussed, almost four years later, following multiple attempts by Harper and Salzwedel and 24 Hour Fitness to modify the definition of the class and by 24 Hour Fitness to have it decertified, the trial court reconsidered its decision and concluded the balance had shifted: "Class certification has ceased to be beneficial. Rather, class certification and notice have become an obstacle to the prompt, fair and (reasonably) economical resolution of this matter."

A significant factor in the court's January 19, 2006 order reassessing the superiority of a class action was its belief "in a representative action the relief granted under [sections 17200 and 17500] may extend beyond the named parties." In addition, the court asserted a class action is unnecessary to provide "the collateral benefits of deterrence and judicial economy" because, "should plaintiffs prevail[,] the deterrence function would be equally well served by injunctive relief against a practice by defendant and a restitutionary remedy, both of which are available under sections 17200 and 17500 even without class certification." The court also noted the absence of class claims should not prevent either retention or continuation of representation by counsel because "the section 17200 and 17500 claims both provide for recovery of attorneys fees."

Each of these points, essential to the trial court's conclusion a class action was not advantageous to the judicial process or to the litigants, is legally incorrect. Proposition 64, which the voters approved at the November 2, 2004 General Election, modified the UCL by imposing new standing requirements for parties seeking relief under section 17200 (standing is limited to certain specified public officials and to any person who has suffered injury in fact and has lost money or property as a result of unfair competition) and requiring individuals, such as Harper and Salzwedel, pursuing representative actions to satisfy the class action requirements of Code of Civil Procedure section 382. (§§ 17203, 17204; see *Californians for Disability Rights v. Mervyn's LLC* (2006) 39 Cal.4th 223, 228–229 [46 Cal.Rptr.3d 57, 138 P.3d 207].) Proposition 64 made identical changes to the requirements for standing and representative actions under section 17500, the false advertising law. (§ 17535; see *Californians for Disability Rights*, at p. 229, fn. 2.) As a result of these amendments, absent class certification, relief—and, in particular, restitution—cannot extend beyond the named parties. These significant statutory changes apply retroactively to this case, filed before passage of Proposition 64, but still pending postenactment (*Californians for Disability Rights*, at p. 227),[4] and fundamentally undermine the trial court's superiority

---

[4] *Californians for Disability Rights v. Mervyn's LLC, supra,* 39 Cal.4th 223, holding Proposition 64 applies to all cases pending on November 2, 2004, was decided six months *after* the trial court's order decertifying the class in the case at bar.

analysis. (See *Fireside Bank v. Superior Court, supra,* 40 Cal.4th at p. 1092 [rejecting argument, after adoption of Prop. 64 amendments, that class action not superior to individual, representative suit based on pre-Proposition-64 procedures for non-class-representative actions under the UCL].)

■ Moreover, even before adoption of Proposition 64, there was no statutory authorization for an award of attorney fees to counsel for a successful plaintiff asserting UCL claims under section 17200. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 179 [83 Cal.Rptr.2d 548, 973 P.2d 527].) Recovery of attorney fees in UCL actions is dependent on the existence of classwide relief (restitution or disgorgement) and application of the equitable common fund or substantial benefit doctrines (see generally *Serrano v. Priest* (1977) 20 Cal.3d 25, 35 [141 Cal.Rptr. 315, 569 P.2d 1303]; *Serrano v. Unruh* (1982) 32 Cal.3d 621, 627 [186 Cal.Rptr. 754, 652 P.2d 985]; *Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.* (2005) 127 Cal.App.4th 387, 396–400 [25 Cal.Rptr.3d 514]) or, in exceptional cases in which the action has resulted in the enforcement of important rights affecting the public interest, the private attorney general doctrine codified in Code of Civil Procedure section 1021.5. (See *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565 [21 Cal.Rptr.3d 331, 101 P.3d 140]; *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 239 & fn. 2 [46 Cal.Rptr.3d 66, 138 P.3d 214].) With the affirmance of the decertification order, contrary to the trial court's prediction, the prospects appear dim for continued representation of Harper and Salzwedel as they pursue only individual claims against 24 Hour Fitness. (See *Baxter v. Salutary Sportsclubs, Inc.* (2004) 122 Cal.App.4th 941, 948 [19 Cal.Rptr.3d 317] [affirming trial court's denial of attorney fees to successful plaintiff who obtained modest relief in UCL action to ensure health club membership contracts conform with statutory requirements].)

■ The other factor central to the trial court's analysis, the ongoing difficulty in properly identifying the members of the certified class from 24 Hour Fitness's records, may be considered as part of a properly conducted evaluation of the superiority of proceeding by class action. However, the need to individually examine each member's contract to ultimately determine whether he or she qualifies for inclusion in the class does not, as suggested, demonstrate a lack of ascertainability or manageability or establish that common questions of fact or law do not predominate. (See *Lee v. Dynamex, Inc.* (2008) 166 Cal.App.4th 1325 [83 Cal.Rptr.3d 241].)[5]

---

[5] It appears this difficulty in identifying class members—and, in particular, in determining which contracts have the words "bonus," "bonus time" or similar handwritten notations on their face—is attributable, at least in substantial part, to the inadequacy of 24 Hour Fitness's computer records. We have previously cautioned an employer may not avoid class certification

With respect to the difficulty in confirming the identity of all class members prior to a determination on the merits, Division One of this court recently affirmed certification of a class consisting of FedEx drivers over FedEx's objection "the members of this class shifted 'in and out, sometimes on a day-to-day basis . . . .' " (*Estrada v. FedEx Ground Package System, Inc.* (2007) 154 Cal.App.4th 1, 14 [64 Cal.Rptr.3d 327].) The court explained, "The class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself as having a right to recover based on the description. [Citation.] [¶] . . . If FedEx's claim is that every member of the class had to be identified from the outset, FedEx is simply wrong." (*Ibid.*; accord, *Lee v. Dynamex, Inc., supra,* 166 Cal.App.4th at p. 1335; see also *Sav-On Drug Stores, supra,* 34 Cal.4th at p. 333 [" 'a class action is not inappropriate simply because each member of the class may at some point be required to make an individual showing as to his or her eligibility for recovery . . .' "]; *Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193, 1208 [76 Cal.Rptr.3d 804] [class of employees ascertainable in spite of absence of specific rest period records; "speculation that goes to the merits of ultimate recovery . . . [is] an inappropriate focus for the ascertainability inquiry"]; *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 744 [9 Cal.Rptr.3d 544] [fact that class may ultimately turn out to be overinclusive not determinative; most class actions contemplate eventual individual proof of damages, including possibility some class members will have none].)

As to the issue of community of interest or the predominance of common questions of fact, although a review of individual contracts with a concomitant analysis of handwritten emendations may be required to identify whether an individual 24 Hour Fitness member qualifies as a member of the class, from the outset the trial court was insistent the class action would be limited to issues appearing on the face of the V.9.96 contract without reference to oral representations. For their part, although continuing to contend members whose contracts include "bonus time" notations should not be excluded from the class, Harper and Salzwedel have consistently argued the form membership contract is fully integrated and their and the class's UCL claims should be determined from the language of the form contract itself, which in their view unambiguously grants members the right to renew for more than an additional 12-month period at the specified membership rate. The parties' various efforts to refine, expand or contract the class definition—all of which were rejected by the trial court—in no way destroy the commonality that exists in the class as defined.

by making a business decision to commingle or fail to document particular job assignments or tasks. (*Aguiar, supra,* 144 Cal.App.4th at p. 134.) A similar principle would seem applicable here.

## DISPOSITION

The order decertifying the class is reversed, and the cause remanded for further proceedings not inconsistent with this opinion. Harper and Salzwedel are to recover their costs on appeal.

Zelon, J., concurred.

**WOODS, J.,** Dissenting.—I respectfully dissent.

It is true the trial court, in concluding class treatment was no longer the superior method to the resolve the claims, made several observations about the availability of relief and remedies in representative actions that do not reflect the current state of the UCL (unfair competition law) in the post-Proposition-64 world. I am not convinced, however, that the trial court's comments concerning the UCL warrant reversal of the decertification order in view of the arguments on appeal and history of this case. Likewise, as I shall explain, I agree with the trial court's view that after five years of class status discovery it no longer appears that the individual class members share a community of interests. Accordingly, I would affirm the trial court's decertification order.

### 1. *Superiority of Class Treatment*

The majority characterizes as a "significant factor" that "fundamentally undermines the trial court's superiority analysis" (in the decertification order) the trial court's belief that in a representative action the relief granted under the UCL, Business and Professions Code sections 17200 and 17500, may extend beyond the named parties and may include restitution and attorney's fees. In my view, the majority's characterizations of the trial court's comments as significant or fundamental factors in the court's conclusion are not borne out in the record. Instead, as reflected at the order to show cause hearing on the decertification order, the trial court's chief concerns lay elsewhere, namely, that given the class plaintiff's seemingly endless efforts to increase the size of the class, the class action proceeding was no longer superior because it was no longer efficient, manageable or expedient.

The motivation behind the court's original class certification order was to provide the parties an avenue to reach the merits of the claims expeditiously. However, the record shows class certification had the opposite effect and failed to confer any substantial benefit to the court or to the parties themselves. This lack of effectiveness is reflected throughout the record as the trial court openly critiqued the delay in reaching the merits of the claims. During

the August 2005 hearing on a production request, the court granted appellants' motion for production to expedite the discovery process and reach the merits of the claim. The court reasoned, "What I am doing is observing that it has taken us a heck of a long time to get where we are, A, and, B, *as I understand it, there is little prospect of an end in sight. There is no light at the end of the tunnel.*" (Italics added.)

Part of what prompted the court to certify the class in the first place in such a limited manner was the belief that superiority of the class action would encourage judicial expedience.

The fact that appellants filed a fourth motion for leave to modify the class definition after five years of class certification undermines appellants' own arguments regarding the superiority of the original class certification order. Each motion for class modification gave the court reason to question the class action as a superior method of adjudication. Contrary to appellants' claims that the trial court "simply folded under the respondent's repeated fractious attacks on the class," appellants have demonstrated the lack of superiority of their own class status by continually filing motions for leave to modify the class definition. Appellants' last request to expand the class to include members who did not even sign the same contract form, as the original class members had done, triggered the trial court's concerns about the superiority of the class action.

Accordingly, the court extended to appellants a final opportunity to show the court the substantial benefit provided by class treatment by issuing its order to show cause. As a purported rationale for the trial court's decertification order, appellants suggest, "the court did not want to be bothered," rather than the court's concern with the class action not coming from the parties' failure to attend to the proceedings. Rather, the court's focus on the number of those proceedings was an observation as to the lack of effectiveness of the class action itself. The court makes this point evident in the decertification order: "Indeed, to hear plaintiffs, *we are today farther from giving class notice than we were on March 3, 2003* [*the date of the original class certification order*], because we still need to revisit the issue of class definition. . . . As this chronology makes clear, *the issues of class definition and identification of the members of the class have taken on a life independent of the merits of the litigation,* and indeed have apparently become the driving force." (Italics added.)

In view of the history of the case and specifically the record on appeal in the decertification proceedings, it appears that the court's comments about UCL remedies in representative actions, albeit legally unsound, were but one

component of the court's analysis of the "superiority" issues[1] and in my opinion do not otherwise undermine the court's primary, sound reasons for decertifying the class.

### 2. *Community of Interest*

As the majority aptly observes, the "community of interest" is defined by, among other issues, whether common issues of law or fact predominate over issues unique to individual class members and whether the class representatives have claims typical of the class. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96 P.3d 194].) Indeed, the burden for the party moving for class certification is not that some common issues exist, but that substantial evidence in the record shows common issues *predominate*. (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1108 [131 Cal.Rptr.2d 1, 63 P.3d 913].) Here by considering whether common questions of law and fact predominated, the trial court used the proper criterion for decertifying the class. (*Walsh v. IKON Office Solutions, Inc.* (2007) 148 Cal.App.4th 1440, 1451 [56 Cal.Rptr.3d 534], citing *Grogan-Beall v. Ferdinand Roten Galleries, Inc.* (1982) 133 Cal.App.3d 969, 975–977 [184 Cal.Rptr. 411] [decertification of class was based on proper criterion where the court determined there was a lack of commonality].)

A review of the court's prior rulings through the various stages of the case shows that the community of interest had always remained an essential criterion in the court's consideration of whether class treatment was justified. Moreover, in determining whether a class action was a superior method of adjudicating the claims, the trial court implicitly concluded that a lack of commonality posed a significant obstacle. A class action cannot be maintained where the existence of or entitlement to damages has to be determined on a case-by-case basis, even if there are some common questions. (*Basurco v. 21st Century Ins. Co.* (2003) 108 Cal.App.4th 110, 120 [133 Cal.Rptr.2d 367] citing *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th, 906, 913 [103 Cal.Rptr.2d 320, 15 P.3d 1071].) This principle tracks the language used throughout the court's proceedings below and explains the court's concern with the inclusion of extrinsic evidence. Specifically, the court's rationales for the class certification and decertification display the court's awareness of the commonality issue and how it would be affected by individualized inquiry of entitlement to damages:

"If the extrinsic evidence with respect to the named plaintiffs demonstrates that they signed up under a particular plan's terms, that may affect the viability of their individual claims.

---

[1] I note that, in this court, appellants' arguments on the Proposition 64 issue are minimal and relegated to the reply brief.

"The fundamental premise of the Court's March 3, 2003 Certification Order was that, '[l]imiting the claims to this proposed class satisfies commonality of the issues of fact and law, and avoids individualized inquiry into either qualification for inclusion into the class or entitlement to damages.' The facts discussed above reveal that this premise has not only been called into question, but actually has been refuted by plaintiffs' own arguments."

Thus, in the original certification order, the court acted with the view that questions of fact predominated on the face of the contract. However, appellants' subsequent actions proved that no such commonality existed. For example, appellants' last motion for leave to modify the class definition was based on an entirely separate contract—the V.7.99 form—not signed by any member of the original class. If the two groups had signed different form contracts, then appellants' argument that the commonality of issues exists on the "face" of the V9.96 form contract strains credulity.[2] To compound the confusion in appellants' argument, appellants claim each member's contract constitutionally requires individual review along with parol evidence, yet also contend that the contract itself is fully integrated. I do not understand how common questions of fact could be found to predominate when parol evidence is needed to substantiate the terms of each claimant's assertion for individual recovery purposes.

Furthermore, appellants' individual contract review demonstrates the exact burden the court wished to avoid through its restrictions on the class in the original order. In defining the "typicality" needed for a community of interest, the trial court must first determine that members of the class have sustained the same or similar damage. (*Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 664 [22 Cal.Rptr.2d 419].) The court's original order only certified class claims for one of appellants' several causes of action, and did so in a limited fashion restricting the class to certain consumers and refusing to permit any individualized parol evidence to prove the existence of class claims. The court denied class treatment on appellants' contract and fraud claims because the parol evidence or extrinsic evidence needed to prove the claims would be an obstacle to adjudication. Instead, the court authorized class treatment for the UCL claims in such a way so as to preserve the commonality of issues and to "avoid" individualized inquiry into either qualification for inclusion in the class or entitlement to damages. The issuance of the original certification order indicated the court's hesitance regarding the use of individualized extrinsic evidence for proof of class claims.

---

[2] In its original March 2003 certification order, the trial court briefly discussed the inclusion of members who signed the V.7.99 form instead of the V.9.96 form, "The evidence appears to indicate that the next form used by 24-Hour Fitness ('V.7.99') changed the wording which gives rise to this suit, and persons who signed a different form of contract do not appear to be appropriate for inclusion in a class challenging the renewal terms in V.9.96."

In short, having been dissatisfied with the court's original certification order from the start, appellants have exercised every opportunity to seek the expansion, and redefinition of the class. Thus, the class certification stage has taken on a life of its own separate from the merits. The majority believes, however, that because these efforts to expand the class have all been unsuccessful, the commonality of interest and facts in the class remains. In contrast, I believe these efforts demonstrate the claims against respondent are complicated and factually diverse requiring an individualized assessment which makes class treatment simply unworkable.

In view of the foregoing, I would affirm.

A petition for a rehearing was denied November 14, 2008, and respondent's petition for review by the Supreme Court was denied February 11, 2009, S168727. Werdegar, J., did not participate therein.